STATE OF MINNESOTA v. CHARLES T. GOODRICH and Another.[1]

January 14, 1897.

Nos. 10,215–10,216—(58–59).

**Selection of Grand Jury—Washington County—Validity.**

The defendants moved to quash the indictments herein on the grounds (1) that the jury list, from which the grand jury returning the indictments were drawn, was not made by the board authorized to make the same; (2) that such jury list was not made as required by the Washington county jury law (G. S. 1894, §§ 5629–5633); (3) that the grand jury was illegally reconvened for an adjourned term of court at which the indictments were returned. *Held,* that the trial court rightly denied the motion to quash.

[1] Reported in 69 N. W. 815.

Forgery—Indictment.
> The uttering of a false or forged instrument, and the making of such instrument, are distinct offenses; and an indictment for the former need not set out who made the false instrument, or how it was made, or the intent of the maker.

Same—G. S. 1894, §§ 6696, 6702.
> G. S. 1894, § 6696, makes it forgery in the third degree for a person to make false entries, with intent to defraud, in accounts or books which he is employed to keep; and knowingly uttering such false entries with such intent is also made forgery in the same degree by section 6702.

Same—Public Offense.
> The indictments herein, purporting to charge the defendants with uttering as true certain false entries in an account of a survey of logs, considered, and *held* to state facts constituting a public offense.

Indictments in the district court for Washington county against Charles T. Goodrich and James Matthews and against Charles T. Goodrich and Joseph Crick. In each case orders were made, Williston, J., denying a motion to dismiss and set aside the indictment and overruling a demurrer to the indictment, and the case was certified to the supreme court for its decision upon the questions arising on the motion and demurrer. Affirmed.

*H. W. Childs*, Attorney General, and *L. L. Manwaring*, County Attorney, for the State.

*J. N. Castle* and *Smith & Parsons*, for defendants.

START, C. J. These cases were certified to this court by the district court of Washington county pursuant to G. S. 1894, § 7395. The questions certified for our decision are identical in each case. They are: (1) Did the trial court err in denying the defendants' motion to quash the indictments? (2) Did it err in overruling defendants' demurrer to the indictments? We answer each of the questions in the negative.

1. The defendants' motion to quash was based on two general propositions: (a) That the grand jury list was illegally selected; (b) that the grand jury was illegally reconvened for an adjourned term of court, at which the indictments were returned.

The defendants claim that the list from which the grand jury returning the indictments were selected was not made by the board

67 M.—12

authorized to make the same, for the alleged reason that the judge was not present when the jury list in question was made.

The method of selecting jurors in the county of Washington is prescribed by special law (G. S. 1894, §§ 5629–5633), which directs that the acting judge of the district court, the clerk thereof, the county auditor, and the chairman of the board of county commissioners shall constitute a board, whose duty it is to make up the jury list for the county. The judge is the chairman of the board, and the clerk of the court is the clerk thereof, and no meeting of the board can be held or business transacted in the absence of the chairman. The findings of fact, on the motion to quash, certified to by the trial court, are, so far as here material, as follows:

The court took such evidence, parol and of record, as the parties offered, and the facts involved in the motions, as found, are that on August 30, 1883, the first jury lists were selected under the special law. "From that date unto the 24th day of August, 1891, there was, during each term of court, selected and added to such list such number of names as were required to make the number of names on the grand jury list equal to the number originally on the list selected August 30, 1883, viz. seventy-two. On August 24, 1891, an entire new selection of seventy-two names was made, which list has been subsequently filled in the same manner as before, and in the manner provided in the act, as such act was evidently construed by the judge who first construed the said act; the last selection of names having been made March 26, 1895, when was prepared a list containing seventy-two names duly certified to by the judge presiding and the clerk. On the hearing of said motion no claim was made that any member of the grand jury in question was in any manner disqualified in acting as a grand juror, or that, as to these defendants, any cause of challenge existed as to any of said jurors."

It is to be noted that the trial court did not find that the acting judge of the district court was not present at the meeting of the board at which the jury list in question was made. On the contrary, the finding is that the list was duly certified by the judge presiding and the clerk. Hence, there is no basis of fact in the certificate for the claim of the defendants that the list was not made by the board authorized to make it because the judge was not present at the meeting at which the list was made. But the defendants urge that such fact appears from the testimony of the clerk taken on the hearing of the motion. This testimony is certified by the trial judge in these words:

"The above and foregoing testimony is by consent of counsel of both parties hereby made a part of the original certificate now on file in the supreme court in the above-entitled action, and is the testimony taken by me in said action on the motion to quash the indictments referred to in said certificate."

It does not appear, from this certificate, that this was all of the evidence upon which the trial court based its findings. But, waiving this point, and treating the testimony as a part of the certificate, still there is no proof of the alleged fact upon which the defendants' claim is based; for the testimony of the clerk tends to support the findings and conclusions of the trial court. The clerk testified that the judge was always present when the board met in the clerk's office, and then, after directing that the lists be prepared, he would go into the court room, and hold court, while the other members prepared the lists, but there was no adjournment until he returned, and he was always present before the work was completed, and approved and signed the list. This shows a substantial compliance with the law.

The defendants also claim that the list from which the grand jury returning the indictments was drawn was not legally made for the further reason that an entirely new list was not made at the first term of the judicial year in which the grand jury in question was drawn. Section 2 of the Washington county jury law (G. S. 1894, § 5630) requires a list of 72 persons qualified to serve as grand jurors to be made at the first general term of the court held in each year; that no person shall be included in such list who was included in the last previous annual list, and was drawn and served as a juror from the same; that all persons having served for one term shall be retired from such list, and shall not again be drawn for one year; and that

"During each term of court the clerk shall notify the board of the persons serving upon the panel for said term, and thereupon said board shall supply the names of persons qualified as hereinbefore provided, sufficient to make the number of names on said list equal to the number originally thereon, and said names when so supplied shall be added to the original list, and immediately after the term the clerk shall strike from the original list the names of all persons who have served as jurors during said term, or have been found disqualified for such service."

It is apparent, from these provisions, that it is only persons who were actually drawn from the list, and served as jurors, that cannot be included in the new list, and that, when the names of all persons who so served, or who were found disqualified, are struck from the original list, the names remaining on such list may be placed on the new list, and only a sufficient number of new names selected to make up the required number of 72. The practice, as shown by the findings of the trial court, from the time the law took effect, was to add each term enough new names to the original list to make, with the qualified persons remaining, the required number, so that at all times the jury were drawn from a list containing the names of 72 qualified persons. This, for all practical purposes, was a new list, and a substantial compliance with the law. It is difficult to see how the requirement that the list shall be purged and filled at each term of court can be complied with except by following the method adopted by the district court.

The last ground upon which the motion to quash was based is that the grand jury was discharged, and could not be legally reconvened at an adjourned term. The facts found by the trial court dispose of this claim.

The grand jury were duly impaneled at the commencement of the May term, 1895, and entered upon the discharge of their duties, and, having reported to the court that they had considered all matters presented to them, the court did not discharge them, but simply excused them from further attendance upon the court, unless their further attendance should be thereafter required, of which notice would be given them. Subsequently, by order of court, they were required to return at an adjourned term on June 26, 1895, and a copy of such order was served on them. In response to the order 20 members of the grand jury reported. They were instructed by the court, and afterwards the grand jury returned the indictments against the defendants. The action taken by the trial court was authorized by the statute, which provides that, on the completion of the business before the grand jury, they shall be discharged by the court, or the court may, in its discretion, adjourn their session from time to time during the same term; but, whether the business is completed or not, they are discharged by a final

adjournment of the court. G. S. 1894, § 7201. The trial court correctly denied the motion to quash the indictments.

2. The defendants demurred to the indictments on the ground that they do not state facts sufficient to constitute a public offense. The indictments purport to charge the defendants with forgery in the third degree; that is, with uttering and publishing as true a false entry in an account of a survey of logs, commonly known as a "tally card," with intent to defraud. The first objection made to the indictments, in support of the demurrers, is that there is no direct allegation that the entry was forged; that is, as defendants say in their brief:

"The pleader, instead of alleging directly that it was forged, has set up particular facts and circumstances, intending to show that this false entry was a forgery within the meaning of section 402, Penal Code. These indictments fail to show that this entry was forged within the meaning of that section—First, because there is no allegation of intent to defraud alleged as of the time of making the entry; and, second, because section 402 [2] does not make it a crime for a person to make a false entry in his own memorandum or book, or memoranda of books, or in those which he is employed to keep."

If we understand this claim, it is that an indictment for uttering a false instrument must allege that it was forged with the intent to defraud formed at the time it was made. But the uttering of a false or forged instrument, and the making of such instrument, are distinct offenses, and an indictment for the former need not set out who made the false instrument, or how it was done, or his intent in making it; for the gist of the offense of uttering a false instrument is that the defendant, knowing it to be false, uttered it as true, with intent to defraud. State v. Wood, 13 Minn. 112 (121); Lockard v. Com., 87 Ky. 201, 8 S. W. 266. The false entry charged to have been uttered by the defendants in the case at bar was not forged, in the sense that it was made by a person not authorized to make it, but it was falsely made, by the person who was charged with the duty of keeping a correct account of the survey of the logs, by inserting in the account logs which had no existence; hence, it was properly charged as a false entry.

The further claim of defendants, that it is not a crime for a person to make a false entry in accounts or books he is employed to

[2] G. S. 1894, § 6696.

keep, and therefore the uttering of such false entry is not a crime, is answered adversely to them by the statute (G. S. 1894, § 6696; Pen. Code, § 402), which provides that:

"A person who, with intent to defraud * * * (1) alters, erases, * * * an account, book of accounts, record, or writing, belonging to, or appertaining to the business of, a corporation, association, public office or officer, partnership, or individual; or (2) makes a false entry in any such account, or book of accounts, * * * is guilty of forgery in the third degree."

The indictments in this case are for uttering a false entry in a survey account, the making of which is, by subsection 2 of section 6696, G. S. 1894, forgery in the third degree. The uttering of such false entry constitutes forgery in the same degree as the making of it. G. S. 1894, § 6702 (Pen. Code, § 408). The provisions of the statute we have quoted include false entries, made with intent to defraud, by a person, in accounts or books he is employed to keep. This construction does not, as urged by defendants' counsel, render nugatory subsection 1 of section 6695, G. S. 1894 (Pen. Code, § 401).

It is also claimed that the indictments are defective because the false entry is not set out therein in hæc verba. It may be conceded that indictments for forgery and uttering forged instruments must set out the instrument in hæc verba. The indictments, however, in this case purport on their face to comply with this rule, and the objection that they do not cannot, therefore, be raised by demurrer. There are some general allegations in the indictments which might, standing alone, indicate, as claimed by defendants, that the whole of the false entry was not set out, but the allegation of the indictments in this respect is as follows:

"Which said false and forged entry in said pass book, or so-called tally-card, was in characters and figures as follows."

Then follows what purports to be the whole of the false entry.

The next objection to the indictments is that they do not show on their face that any person could be defrauded by uttering the false entry. Where an intent to defraud is required in order to constitute a crime, a general allegation of such intent is sufficient in the indictment, without naming the party defrauded. G. S. 1894, §§ 6842, subd. 5, 6845; State v. Adamson, 43 Minn. 196, 45 N. W.

152. The statute, however, does not change the common-law rule that, if it does not appear on the face of the instrument forged or uttered, that some one might be defrauded by it, extrinsic facts must be alleged in the indictment showing that some person could be defrauded by it. State v. Wheeler, 19 Minn. 70 (98); State v. Riebe, 27 Minn. 315, 7 N. W. 262.

The false entry set out in the indictments does not show on its face that any person might be defrauded by acting upon it as true. But extrinsic facts are alleged in the indictments which, when taken in connection with the general laws of the state relating to the duties of the surveyor general of logs and lumber, make it perfectly manifest that any person relying on the false entry would be defrauded. The indictments allege the manner of doing business in the surveyor general's office, and show on their face that the defendant Goodrich was employed to assist a deputy surveyor in making a survey of logs; that he was to make the entries (in a pass book, or tally card, so called) of the number of the logs, their marks, and the number of feet therein, as surveyed by such deputy; that the tally cards were returned into the office of the surveyor, and were made the basis for making out true and correct scale bills. Such scale bills are made by statute prima facie evidence of the facts stated therein. It follows that, if false entries are made in the tally cards, the scale bills will also be false, and persons relying thereon will necessarily be defrauded.

The last objection to the indictments is that they are uncertain as to the subject-matter of the uttering, in that it does not appear that the pass book or tally card belonged to or appertained to the office of the surveyor general at the time the false entry was made. A reading of the indictments is a sufficient answer to this objection. They allege that the pass book, when uttered, constituted an account in the surveyor general's office, and purported to contain entries by the defendant Goodrich as an employé of the surveyor general.

The trial court rightly denied the motion to quash the indictments, and overruled the demurrers thereto.

Orders affirmed.