452

# STATE v. H. L. STEARNS.[1]

November 13, 1931.

No. 28,634.

*E. A. Kling* and *W. W. Bane,* for appellant.

*Henry N. Benson,* Attorney General, *James E. Markham,* Deputy Attorney General, and *Arthur J. Sullivan,* County Attorney, for the state.

[1]Reported in 238 N. W. 895.

STONE, J.

Convicted of the crime of uttering a forged instrument, defendant appeals from an order denying his motion for new trial.

The instrument in question is a Crow Wing county "auditor's warrant" bearing date of June 3, 1929, for $30, payable to the "order of Ray Carner." Itself genuine and properly issued, the forgery alleged was that of blank indorsement by the payee. The warrant was one of a series issued to Carner for work done under defendant as a "maintenance man" on a county highway. Subject to the approval of the county engineer, defendant was authorized to employ help as needed. Men so hired became the employes of the county and went on the payrolls as such at a fixed wage of $3 per day.

Carner was just under 21. The arrangement for his hiring was made by defendant with the boy's father. His daily wage was thereby fixed for 1928 at $1.50 and for 1929 at $1.75. Defendant has settled either with the young man or his father for all of his work at those rates. But he has collected from Crow Wing county for all such labor at the rate of $3 a day, the difference going into his own pocket, without the knowledge of the engineer or any other officer of Crow Wing county. Time checks were first signed by Carner, and upon these the auditor issued his warrants. Some of them were regularly indorsed by Carner and turned over to defendant. Others were not indorsed by Carner. Nevertheless, his name was indorsed by some member of defendant's family under his direction, and he then cashed the warrants. The record certainly leaves no reasonable doubt that it was defendant's purpose, and for some time had been his practice, to collect from the county for Carner's roadwork at $3 per day, to pay him at the rate of $1.50 or $1.75 as already indicated, and to pocket the difference.

We do not ignore evidence for defendant that Carner was employed part of the time on defendant's farm and that he authorized others to indorse for him county warrants issued in his name. This latter evidence is not conclusive. There is opposing evidence for the state making an issue of fact of such nature that we cannot disturb the jury's decision of it. Defendant himself did not take

the stand, but from others' testimony came the suggestion that it was defendant's view that Carner, being only a boy, his work was not worth more than the wage defendant agreed to pay him.

■ It is true, as argued for defendant, that "the gist of the offense of uttering a false instrument is that the defendant, knowing it to be false, uttered it as true, and with intent to defraud." State v. Goodrich, 67 Minn. 176, 69 N. W. 815. The evidence justifies the conclusion that defendant had a member of his family indorse the payee's name on the warrant in question so that he might collect and retain for himself half or nearly half of the proceeds. So there is foundation for the conclusion reached by the jury that defendant knew that when he cashed the warrant through a bank, with the false indorsement of the payee's name, he knew precisely what he was doing and that he was passing a forged instrument.

■ Going now to the factor of intent to defraud, the argument for defendant is that even though the contract of employment was unlawful, "all profits and benefits accruing from the acts" of Carner belonged to defendant. In that connection is stressed the evidence for defendant that Carner had authorized defendant to sign or have his name signed on the backs of the warrants issued in his name. As already indicated, this testimony but raised a fact issue, which has been found against defendant on sufficient evidence the other way. On the evidence for the state, which was believed by the jury, it is futile to argue that no fraudulent intent appears. Defendant could well have been considered the originator and perpetrator of the scheme whereby he was unlawfully appropriating to himself a substantial portion of the wage paid by the county to Carner. He had no right to any portion thereof. Yet he was getting it by the unauthorized indorsement of Carner's name on the warrants issued to him. Defendant indorsed the warrants himself and is financially responsible. So we assume that he cannot be charged with an intention to defraud the bank through which the warrant in question was cashed. But there remains the question whether he intended to defraud the county. Unless Carner authorized the indorsement by another of the warrant in question,

the result was a fraud on the public service and Crow Wing county. It was a piece of petty graft with a fraudulent aspect and effect too plain to admit of reasonable argument.

■ Defendant's practice was discovered by Mr. J. T. Langlais, a deputy public examiner. In the course of his investigation he subpoenaed defendant and questioned him under oath, questions and answers being recorded by a stenographer. At the trial Mr. Langlais was called as a witness by the state and interrogated far enough to show that he had subpoenaed and questioned defendant concerning his employment of Carner. He was asked the question: "Did he [defendant] tell you what rate of pay" Carner was to get? Objection was interposed on the ground that defendant had appeared before Mr. Langlais in obedience to a subpoena issued by the latter. The objection was sustained. Mr. Langlais should not have been interrogated by the state concerning disclosures made by defendant in response to the subpoena of the deputy public examiner. State v. Rixon, 180 Minn. 573, 231 N. W. 217, 68 A. L. R. 1501. But no prejudice could have resulted. The witness went into another interview with defendant, not had in response to a subpoena, which brought out his admissions that while the county was paying for Carner's work at the rate of $3 a day, he, Stearns, was accounting to the boy for only $1.50 in 1928 and $1.75 in 1929, furnishing him in addition his midday meal. On the whole record, there is no question of the truth of those admissions. So it is futile to argue that defendant was prejudiced by the calling of the deputy public examiner and the extent to which he was examined.

■ A witness for defendant was his wife. On direct examination she testified at length concerning Carner's employment by her husband. She identified the indorsement of his name on several warrants as looking "something like my daughter's" handwriting. She had heard Carner tell "others to sign his name" on the back of the warrants. She too had been subpoenaed and examined under oath by Mr. Langlais, and the resulting testimony had been reduced to writing. On cross-examination she was asked this partial question: "And do you remember testifying or stating at that

time, Mrs. Stearns, * * *?" Her testimony went no farther because of a ruling that it would be incompetent "unless it is made to appear that her statements under oath were then made with the consent of her husband."

No error can be predicated upon any proper attempt to cross-examine Mrs. Stearns after she had been examined as a witness for defendant. She was not charged with crime, as a result of her examination by the deputy public examiner, or otherwise. If there or elsewhere she had made impeaching statements, it is not apparent to us why they should not have been received. Of course, one spouse cannot be examined for or against the other without the latter's consent. G. S. 1923 (2 Mason, 1927) § 9814. That privilege may be waived, and was by defendant when his wife was called and testified as a witness for him. She was thereby subjected to cross-examination in the usual manner. National G. A. Bank v. Lawrence, 77 Minn. 282, 79 N. W. 1016, 80 N. W. 363. That rule is analogous to the one that when a defendant in a criminal prosecution becomes a witness for himself he thereby so far waives his immunity from compulsory examination that he may be cross-examined concerning any matters within the issues, even when they tend to show his commission of another crime. State v. Wood, 169 Minn. 349, 211 N. W. 305.

There being no prejudicial error, the order appealed from must be affirmed.

So ordered.

HOLT, J. (dissenting).

I dissent. It appears to me that defendant was tried and convicted of some other crime than that of uttering a forged instrument—the crime of which he was accused.

DIBELL, J. (dissenting).

I dissent.