STATE v. LORENTS BJORNAAS.[1]

January 16, 1903.

Nos. 13,241—(21).

**Forgery—Intent to Defraud.**

The intent to defraud is an essential element of the crime of uttering a forged instrument, which must appear from facts reasonably calculated to show such guilty purpose, though it may be negatived by evidence having a tendency to disprove the existence of such intent.

**Same—Indorsement of Check.**

While the intent to defraud in uttering a forged indorsement to a bank check may be presumed from the fact of affixing the signature of the payee to the check by the accused, which gives it an apparent value it

[1] Reported in 92 N. W. 980.

did not otherwise have, this is not an irrebuttable presumption, but is open to explanation upon all the facts and circumstances.

Appeal by defendant from a judgment of the district court for Otter Tail county, Baxter, J. Reversed, and new trial granted.

*George W. Downing, C. C. Houpt* and *Alexander Marshall,* for appellant.

*W. B. Douglas,* Attorney General, *W. J. Donahower,* Assistant Attorney General, and *C. L. Hilton,* County Attorney, for the State.

LOVELY, J.

Defendant was convicted of forgery in the second degree, in passing upon the First National Bank of Fergus Falls a check of $60, having a forged indorsement thereon. A motion for new trial was denied. Defendant appeals from the judgment.

It was established at the trial that defendant received from one John J. Aune a check for $60 on a bank, payable to the order of Gunder Bartelson; also that defendant wrote the name of Bartelson on the back of the check, and collected the money thereon from the bank. The contention in behalf of defendant is that the trial court, by its orders excluding evidence, as well as in its instructions to the jury, treated these conceded facts as conclusive of his guilt, notwithstanding unavailing efforts on his part to show that, in placing Bartelson's signature on the check, he did not intend to defraud, but to obtain possession of money rightfully belonging to his wife.

To understand intelligently the effect of the rulings complained of, it is necessary to state the facts which defendant claims he could have shown, had he been allowed to do so, at the trial: Defendant's wife raised a quantity of wheat on her farm. She authorized her husband to sell it for her. He took it to Aune, a wheat buyer, for that purpose, and received in payment therefor two checks on the bank, one of which was for $60, made payable to Gunder Bartelson, a creditor of defendant. Defendant, though indebted to Bartelson, had given no direction to Aune to make an application of any part of the funds from the sale of the wheat to the payment of this claim; but Aune and Bartelson had

a previous understanding, whereby this result was to be secured by making the check for $60 in payment for this wheat payable to the latter, and delivering it to the defendant, which would hold up that sum for Bartelson's benefit. It is not claimed for the prosecution that Aune had acquired a right to dispose of any part of the proceeds of the wheat, further than resulted from the delivery of the check in this form, and by the fact that Aune claims he told defendant to take it to Bartelson, which he says the latter agreed to do when he received it. Defendant unequivocally testified that no authority was given Aune to divert any portion of the funds received for the wheat in payment of a debt due from him to Bartelson, and that he did not agree to deliver the check to Bartelson, but took it supposing it to be in payment of the wheat.

It is necessary to quote from the record the portions involved in defendant's assignments of error which are not otherwise contradicted or modified. On the cross-examination of Aune the following is from the evidence:

"Q. Bjornaas shipped a carload of wheat through you to Duluth, didn't he? (Objected to as incompetent, irrelevant, and immaterial. Objection sustained.) Q. That check [the check in question] was given in payment of wheat that Bjornaas shipped through you to Duluth, wasn't it? (The state objects to the introduction of any evidence relating to what transpired prior to the issuance of this check, as to what it was for.) Mr. Houpt: This check is the basis of this prosecution. This witness has been examined in relation to this check. Now, certainly, we have a right to go into the history of this check, I think, by cross-examination. The Court: The check itself, and the transaction immediately connected with it; but I will not allow you to go back and show any transaction or trade, the result of which was the giving of this check for the balance of money. * * * "

Again, in the further cross-examination of this witness, were the following questions and answers: "Q. Now, after this check was delivered,—was given to Bjornaas,—he came back to you, and asked you to take it back and give him one in his own name, didn't he? A. No; he didn't say in his own name. As near as I can remember, it must have been two weeks afterwards he came up there and wanted to change it. Of course, I didn't mark down the date. Q. It was after you had given him the check? A. Yes, sir; he come up there one morning and said he wanted that check

changed, and then I told him I had settled up with him. I was busy,—was loading up a load of wood. I told him that I was busy; that I had settled up with him for that load of wheat, and I would not settle up with him again, because I had settled up, and all was satisfactory."

Again, later on in the same cross-examination: "Q. Now, you made out one check in payment of this wheat to Bjornaas' wife, didn't you? A. Yes, sir. (Objected to. Objection sustained.) Q. You didn't buy any of this wheat of Bartelson, did you? A. No, I didn't. Q. And Bjornaas never authorized you to draw the check for any part of this wheat in Bartelson's name? Answer that question 'Yes' or 'No.' * * * A. No; I made out the check and gave it to him. Q. He didn't authorize you to do it? A. He accepted the check. Q. He didn't authorize you before that— You had no authority from the defendant to make this check in Bartelson's name? A. No, sir. Q. Nor you had never talked with him about it before you had it made out to Bartelson? A. I talked with Bartelson. Q. With the defendant? A. No, sir."

After having proved that Bartelson never authorized defendant to sign his name to a check, the defendant was sworn as a witness in his own behalf, when this offer was made:

"Defendant offers to show at this time that the wheat shipped was wheat belonging to the wife of this defendant, and that neither he nor Mr. Bartelson had any interest whatever in that carload of wheat, and that this check, Exhibit A [the check in question], was given as part payment of that car of wheat. (Objected to as incompetent, irrelevant, and immaterial, which was sustained.)"

Again, later on in defendant's examination:

"Q. Was that check issued with your knowledge and consent? A. Which check do you mean? Q. The check, Exhibit A, to Gunder Bartelson. Was it made out to Gunder Bartelson with your knowledge and consent? A. No; that was not given to Gunder Bartelson with my consent."

The defendant was then allowed, against objection, to testify that he did not intend to cheat or defraud any person, but was not permitted to show that he was authorized by his wife to dispose of the wheat and collect pay for it.

At the close of the evidence the court, in its charge to the jury, gave these instructions:

"If you believe from the testimony in this case, beyond a reasonable doubt, that this man [defendant] took this check to the First National Bank, knowing that name to be forged * * * (and he does know it, because he admits himself that he wrote it there), and presented this check to that bank, and drew the money on it * * * he is guilty of the offense charged in this indictment."

Again, in speaking of the conduct of the defendant, the court further said: "He [defendant] goes there with a check. The bank had no authority to pay that money. They could only pay that money upon the authority of Gunder Bartelson, and that authority could be expressed by an indorsement on the back of the check. They did not get that authority from Gunder Bartelson, but this man forged a name there by which they supposed they had the authority, and thereupon they paid that money, and were defrauded on it."

Again: "It seems to me that the case is too plain to need further comments from me. This matter of forgery is looked upon by the states and by the courts and by law as a serious offense. Great injuries come from the misconduct and dishonesty of parties in forging the names of other men. This is a clear case of forgery. He don't deny it."

Again: "Now, through what act did he [defendant] get that money? Was it anything else than a criminal and fraudulent act."

In addition to these instructions, the court said the defendant was supposed to be innocent until his guilt was established by such testimony as satisfied them beyond a reasonable doubt of his guilt, but it seems very clear from the manner in which the case was thus submitted that there was very little doubt of defendant's guilt existing in the opinion of the court, or that under the entire charge the jury could find that in passing the indorsed check upon the bank defendant could be innocent of the crime charged. We think the learned trial court in these respects misconceived and incorrectly stated the rights of defendant, as well as in excluding evidence tending to show the character of the entire transaction. It is elementary that the animo furandi, or intent to defraud, is an essential element of the crime of forgery, or of uttering a forged instrument, which is to be proved or inferred from facts reasonably tending to establish a guilty purpose, and may be negatived by evidence showing the absence of such an intent.

88 M.—20

Wharton, Crim. L. § 717; Underhill, Crim. Ev. 405; People v. Loew (Sup.) 19 N. Y. Supp. 360; People v. Wiman, 148 N. Y. 29, 42 N. E. 408; Barnum v. State, 15 Ohio, 717; State v. Greenwood, 76 Minn. 211, 214, 78 N. W. 1042, 1117. As stated in a case very similar on the facts to the one at bar: Where the intent to damage or defraud is a salient and essential part of the case, such intent is not an irrebuttable presumption of law, but is an open question for the jury, to be determined by the facts and circumstances in proof, for the signing of another's name without authority is not necessarily forgery. Kotter v. People, 150 Ill. 441, 37 N. E. 932.

We therefore hold that defendant should have been permitted to show that the wheat shipped belonged to his wife, that neither he nor Bartelson had any interest therein, and that the check upon which he indorsed the signature of Bartelson had been received in part payment thereof, with other circumstances having a bearing upon his motives. While in the strict legal sense the affixing of the signature of Bartelson to the check given by the wheat buyer was illegal, and created no right to recover thereon, yet the wheat buyer had no right, either, to make an application of the money belonging to defendant's wife to pay her husband's debt. Whether the husband's acceptance of the check was a consent to have the application thus made was a question of fact for the jury, and whether, after defendant found that the check ran to Bartelson, who neither owned nor had any interest whatever therein, instead of to his wife, and was not able to obtain the money, since Aune refused to make the change to allow him to do so, he honestly believed that he had the right to indorse the name of Bartelson thereon, to secure for his wife what belonged to her, should have been submitted to the jury upon all the facts. The failure to allow this was highly prejudicial to defendant's rights, and it follows that the charge of the court, which practically imposed upon the jury the duty to find the defendant guilty upon the mere proof of the physical fact that he wrote Bartelson's name on the back of the check, was error. State v. Gullette, 121 Mo. 447, 26 S. W. 354.

Judgment reversed and a new trial ordered.