STATE v. THOMAS COREY, ALIAS TOM FINN.[1]

December 12, 1930.

No. 28,043.

[1]Reported in 233 N. W. 590.

Patrick J. Ryan, for appellant.

Henry N. Benson, Attorney General, James E. Markham, Deputy Attorney General, Floyd B. Olson, County Attorney, and William G. Compton, Assistant County Attorney, for the state.

Holt, J.

The appeal is from an order denying defendant a new trial after a verdict of guilty of robbery in the first degree.

We state the facts substantially as told by defendant when testifying. He knew Gilbert Peterson, an ex-convict, and drove around Minneapolis with him on the Saturday before Labor day, September 2, 1929. While so driving they met with one Capinie, the St. Paul collector for the Pure Oil Company, a corporation owning and operating chains of gasolene filling stations in the Twin Cities. An arrangement was made between the three men to rob the office of the Pure Oil Company on the third floor in the Essex building, on the corner of Nicollet and Tenth streets, Minneapolis, on Monday, September 2, at about 1:30 p. m., the time the collectors for the Minneapolis stations were expected to arrive with the collections to deposit them in the safe of the company. To carry out the plan defendant and Peterson entered the company's office at about 10 a. m. on Monday to look over the "lay" of the premises and select a room or place from which to carry on. Capinie was then alone in the office putting the St. Paul collections in the safe, which was provided with a time lock. They then learned that the time lock would be set to open shortly before 1:30 p. m. when some $3,000

was expected in from the Minneapolis stations. After selecting the room in which to wait, Peterson and defendant left the building but returned about noon, parked their car, and, both armed with loaded weapons, went into the room selected, having obtained a key to the office from Capinie. They heard the time lock to the safe open but had to wait until 1:45 p. m. before Westman and a police officer, Noonan, who had been directed to accompany the collector on his collecting trips, appeared. The officer was not in uniform. As soon as Westman had unlocked the inside doors to the safe wherein the money was placed in boxes, Peterson and defendant suddenly with their guns confronted Westman and Noonan and compelled them to lie on the floor. In that position defendant, as he testified, "menaced" them with his sawed-off shotgun, while Peterson proceeded to gather up the money in the safe, first having relieved Noonan of his revolver. Before Peterson could gather up the money, a detail of police officers covered Peterson and defendant with guns and revolvers, and shooting began. Peterson was instantly killed, and defendant also fell, shot through the hand. In addition to this summary of his testimony defendant was asked this question on cross-examination:

"So when you went up to the Pure Oil place you went up there for the purpose of holding those people up, did you not—people that might come in?

A. "Yes, sir.

Q. "And you did hold them up, did you not?

A. "Yes, sir."

The court in the beginning of the charge properly stated that the state must prove defendant guilty beyond a reasonable doubt, and that if the jury had "not that abiding conviction amounting to a moral certainty, you have a reasonable doubt and should not find him guilty." But before the conclusion this unusual instruction was given:

"The court is determining as a matter of law that the defendant now on trial before you is guilty of one or the other of two specific

offenses. He is either guilty of robbery in the first degree or he is guilty of attempt to commit robbery in the first degree; and the court is charging you as a matter of law to return one or the other of these verdicts, according to the facts as you find them to be."

Exception to the instruction was saved. The only error assigned in this court is based upon the charge quoted, the contention being that an instruction to find a defendant guilty violates art. 1, §§ 4 and 6, of the state constitution.

It has always been the accepted law in this state and, we think, in the overwhelming majority of jurisdictions in this country, that the court may not direct a verdict of guilty in a criminal trial. A verdict of not guilty may be directed. "It is elementary that a trial court cannot instruct a jury to return a verdict of guilty in a criminal prosecution" was said in State v. Nelson, 91 Minn. 143, 146, 97 N. W. 652, 653. The one case squarely holding that a court may direct a verdict of guilty in a criminal case is U. S. v. Anthony, 11 Blatchford, 200. This decision other federal judges decline to follow. U. S. v. Taylor, 11 F. 470 (3 McCrary, 500). The reason given in the Taylor case for holding that the court may not direct a jury to render a verdict of guilty in a criminal prosecution is quoted and approved in Sparf and Hansen v. U. S. 156 U. S. 51, 715, 15 S. Ct. 273, 39 L. ed. 343, wherein an exhaustive consideration is given by Mr. Justice Harlan to the proposition that the court in a murder trial could instruct the jury that the evidence did not as a matter of law warrant finding defendants guilty of a lesser crime than murder in the first degree. The dissenting opinion of Mr. Justice Gray is equally exhaustive, holding that the court may not so instruct. In that case however, contrary to what was done in the case at bar, the trial court advised the jurors that theirs was the power to render a verdict of not guilty. In Konda v. U. S. (C. C. A.) 166 F. 91, 22 L.R.A.(N.S.) 304, the authorities holding that a court may not direct a verdict of guilty are cited.

We content ourselves with stating that it was error to instruct as was here done; that the law appears to be well settled that when an accused goes to trial before a jury upon an indictment, that jury

has the power to return a verdict of not guilty even though the evidence demonstrates that as a matter of law he is guilty.

But this court is committed to the rule that to reverse, the error must appear to have prejudiced the accused. Can prejudice be inferred here? Defendant had an impartial jury. This jury having found him guilty of the crime charged when under the instruction of the court it could have found him guilty merely of an attempt, can it reasonably be argued that he would have been acquitted if the court had told the jury that it possessed the power to render such a verdict? We think not. The state also claims that in view of defendant's testimony above quoted his conviction is authorized under G. S. 1923 (2 Mason, 1927) § 9953, reading:

"No person indicted for any offense shall be convicted thereof, unless by admitting the truth of the charge in his demurrer or plea, by confession in open court, or by a verdict of a jury, accepted and recorded by the court."

There is force in the claim, for defendant's testimony was given in open court, and as a matter of law the actual robbery he was engaged in when apprehended he was committing deliberately and intentionally. But we are not prepared to hold that here was "a confession in open court." We think "by confession in open court" is meant a formal admission that the specific crime or one included within the indictment was committed, the confession being entered of record virtually amounting to a change of plea to guilty.

We are however of the opinion that the error in the charge referred to should not result in a new trial on the broad ground that by his own testimony defendant had so clearly admitted that he wilfully, intentionally, and maliciously committed the offense of which the jury found him guilty that no prejudice resulted from the omission to instruct the jury as to its power to acquit. After defendant had given the testimony, part summarized and part quoted above, the court could properly advise the jury that if such testimony was accepted as true he was as a matter of law guilty of robbery in the first degree or guilty of an attempt to commit that crime. This case is not to be distinguished from that of State v.

Corrivau, 93 Minn. 38, 45, 100 N. W. 638, 641, where the court instructed that self-defense was not established and the jury was limited to one of three verdicts, "that is, guilty of murder in the first degree, or murder in the second degree, or manslaughter in the first degree." This court said [93 Minn. 45]:

"Such was the practical effect of the instructions, but nevertheless they were correct, for upon the undisputed evidence a verdict of guilty of manslaughter in the first degree was the most favorable finding for the defendant that it was legally possible for the jury to make. It was, therefore, the duty of the trial court to instruct the jury as to the law as in civil cases. In jurisdictions where, in criminal cases, the jury are the judges of both the law and the facts, instructions similar to those here complained of have been held to be erroneous."

The stand taken by the supreme court of Michigan, not to reverse for technical error where the record shows that an accused is clearly guilty of the crime charged, is commended by this court in State v. Nelson, 91 Minn. 143, 97 N. W. 652.

However in People v. Heikkala, 226 Mich. 332, 197 N. W. 366, 367, a murder case, reviewing its former decisions which are said to be impossible to harmonize, the court concludes [226 Mich. 337]:

"A trial judge, having properly applied the law to the facts in a criminal case in which intent is not involved, and where the facts are undisputed, may say to the jury that it is their duty to bring in a verdict of guilty, but he may not go further and peremptorily direct or compel such verdict. The responsibility for the verdict must be left with the jury."

The court in the instant case did not give a binding instruction to find a verdict of guilty nor state that a verdict of not guilty must not be rendered.

In Seiden v. U. S. (C. C. A.) 16 F. (2d) 197, 198, Judge Learned Hand said:

"If they will, jurors may set at defiance law and reason and refuse to find the accused guilty; when they do, he escapes, however

plain his guilt. But, though that is within their power, it is not within their right; they are as much bound by the law as a court. No judge is bound to recognize, or even to mention, that power in his dealings with them; on the contrary, he may and ordinarily should direct them to convict, if they find the necessary facts. Indeed, if these be admitted, he may even in substance, if not in form, direct them outright to convict."

Horning v. District of Columbia, 254 U. S. 135, 138, 41 S. Ct. 53, 54, 65 L. ed. 185, is cited, wherein Mr. Justice Holmes uses this language concerning an instruction:

"The facts were not in dispute, and what he did was to say so and to lay down the law applicable to them. In such a case obviously the function of the jury if they do their duty is little more than formal. The judge cannot direct a verdict it is true, and the jury has the power to bring in a verdict in the teeth of both law and facts. But the judge always has the right and duty to tell them what the law is upon this or that state of facts that may be found, and he can do the same none the less when the facts are agreed. If the facts are agreed the judge may state that fact also, and when there is no dispute he may say so although there has been no formal agreement. Perhaps there was a regrettable peremptoriness of tone —but the jury were allowed the technical right, if it can be called so, to decide against the law and the facts—and that is all there was left for them after the defendant and his witnesses took the stand. If the defendant suffered any wrong it was purely formal since, as we have said, on the facts admitted there was no doubt of his guilt."

The last sentence applies with full force to the case at bar. The constitutional guaranty that an accused shall enjoy a trial before an impartial jury is not so rigid that some feature of what is generally understood to be such jury may not be waived.

In Patton v. U. S. 281 U. S. 276, 50 S. Ct. 253, 263, 74 L. ed. 854, a verdict rendered by 11 jurors was sustained, both the accused and the government having agreed to go on with the trial after one

juror became too ill to remain on the panel. The decision is an able exposition of the proposition that a defendant in a criminal prosecution may waive what is considered a constitutional jury, but the Supreme Court cautions against not too readily allowing such waiver, saying [281 U. S. 312]:

"Not only must the right of the accused to a trial by a constitutional jury be jealously preserved, but the maintenance of the jury as a fact-finding body in criminal cases is of such importance and has such a place in our traditions, that, before any waiver can become effective, the consent of the government counsel and the sanction of the court must be had."

And so here it is to be hoped that in holding the error of the court to be without prejudice to this defendant the trial courts of this state will find no hint or invitation to depart from the time-honored and, we think, correct practice heretofore prevailing not to instruct the jury that only a verdict of guilty may be returned. Scarcely a criminal trial takes place where there is not some dispute as to facts, and most every offense involves a question of intent upon which and similar matters the jury alone should pass and render a verdict either of guilty or not guilty. "In all criminal prosecutions the accused shall enjoy the right to a speedy, public trial, by an impartial jury" is the mandate of the constitution [art. 1, § 6]. It behooves the courts to see that this right is enjoyed in the orderly manner sanctioned by past experience, and that is to let the impartial jury determine whether the accused shall be declared guilty or not guilty by the verdict. If the crime is admitted by the accused from the witness stand, as here, was done, there is no occasion for the trial court to depart from the usual and approved practice for fear that the jury will go wrong.

The order is affirmed.

LORING, J (dissenting).

I agree with the majority that the defendant did not "confess in open court" and that it was error to instruct the jury to bring in a verdict of guilty. From the holding that such an instruction was error without prejudice I dissent. It is conceded that under the

accepted construction of the constitution the jury in a criminal case has the "power" to acquit notwithstanding the evidence of guilt may be conclusive. That being the case, I cannot follow the reasoning that says an instruction which in effect deprives the jury of that power is without prejudice to the accused's constitutional rights. It may be that the constitution as it is now interpreted is too generous toward an accused, but obviously that should be corrected by the people, not by the courts. The time may come when the right of trial by jury will be abolished. It has not yet come.

That a violation of a constitutional right can be without prejudice to the accused I cannot concede, especially where such right if protected embraces the possibility of an acquittal. We might as well say that no prejudice to an accused would arise from his being called by the state as a witness against himself because presumably he tells the truth, or that a deposition used against him could do no harm because other witnesses may have testified to the same effect. If the constitution has been rightly interpreted, it is just as positive in its protection of the accused in his right to a jury trial free from a peremptory instruction of guilt as it is in its protection against being a witness against himself or of his right to be confronted by the state's witnesses.

The reason usually assigned for the right of a jury to acquit regardless of the state of the evidence is that the safety and liberty of the citizen will thereby more certainly be secured. Our forefathers had much experience with the king's judges, and there can be no doubt that the framers of the constitution and of G. S. 1923 (2 Mason, 1927) § 9953, had the security of the accused citizen in mind when they safeguarded trial by jury. I cannot conceive how a directed verdict of guilty comes within the "verdict of a jury" required by that statute. The trial court thereby takes the determination of the case from the jury and it, not the jury, makes the determination of guilt.

In the case of State v. Koch, 33 Mont. 490, 85 P. 272, 8 Ann. Cas. 804, the supreme court of Montana had before it a case where there was no dispute in the evidence as to the homicide, the defendant

there, as here, frankly admitting the facts as shown by the state. The trial court had instructed the jury that it could not find the defendant not guilty. The supreme court in an able and convincing opinion granted a new trial on account of the prejudicial nature of the instruction. That is what I think we should do here. It is better that justice should be thwarted in a single instance than that even a guilty man should be deprived of a constitutional right or a fair trial. A new trial in this case would not necessarily mean an acquittal, but it would mean a greater regard for the constitutional rights of an accused, be he innocent or guilty. The problem of enforcing the criminal laws is largely one of apprehending the criminal. After he has been taken, the question of his guilt or innocence should be left where the constitution puts it, with a properly instructed jury.

