STATE v. RAYMOND J. HIGGIN, ALIAS R. J. HARRIS.

99 N. W. (2d) 902.

December 11, 1959—No. 37,752.

*Daniel F. Foley,* for appellant on appeal only.

*Miles Lord,* Attorney General, *Charles E. Houston,* Solicitor General, and *Martin J. Healy,* County Attorney, for respondent.

DELL, CHIEF JUSTICE.

Defendant was convicted of the crime of forgery in the second degree. He appeals from an order denying his alternative motion for a new trial or for a transcript at the expense of the county of Wabasha.

In October 1957 the defendant was employed by one Owen Eikens, a publisher of a book of charts of the Mississippi River, who did business under the name of Key City Maps and Key City Marine Maps. Defendant's job was to sell advertising for publication in the book and to prepare advertising copy for printing. He was authorized to endorse checks made payable to Key City Maps or Key City Marine Maps and to retain a commission from the proceeds. The remainder

of the moneys was to be turned over to Eikens "before publication" or, according to defendant, "within thirty days after publication."

On April 1, 1958, Eikens and one Gordon Tronson drove from St. Paul to Lake City for the purpose of talking to the defendant. They located him at the residence of Rosalind Kruse where the defendant had a room. According to Eikens the following conversation, among others, took place between the defendant and himself regarding the latter's employment:

"Q.   Did you have any conversation with him relative to his employment?

*   *   *   *   *

"The Witness: Yes, I told him if he had an opportunity to get another job he had better take it, he was done with me.

*   *   *   *   *

"Q.   Now when you informed him that he was through as your employee what did he say?

"A.   He wanted to clear up some loose ends or finish some accounts that he stated were hanging fire or ready to close.

"Q.   What did you say to him?

"A.   That he was done, finished, through, fired; I never wanted him to use my name or my company name again ever, and if there would be an account he could close tomorrow that would mean a thousand dollars to me I didn't want it."

During the course of the conversation, the defendant left said residence with some other people and when he did not return Eikens picked up various selling aids, including salesbooks, which had previously been given to the defendant and returned to St. Paul.

Eikens and Tronson returned the next day and had an extended discussion with the defendant at a tavern in Lake City. Mrs. Kruse was also present during this meeting. According to Eikens it was agreed that the defendant was to finish up and prepare copy for all advertisements previously sold but was not to solicit any new advertisements. He returned to the defendant some of the sales material he had taken the night before but kept all of the salesbooks.

Tronson, who at that time was interested in forming a partnership with Eikens, testified that Eikens told the defendant "You are fired, you are through," a number of times, and in response to defendant's request that he continue in the employment, Eikens had said "No more new business." He also testified that all Eikens wanted was the copy from the business that defendant had sold so that he could get the book out.

The defendant, on the other hand, testified that while at one time during the April 1 and 2 discussions Eikens had told him not to sell any more ads, he had finally been given permission to do so. According to the defendant, Tronson, who he claims was introduced to him as Eikens' partner, concurred in the agreement that the defendant could continue selling. Mrs. Kruse testified that Tronson said he would accompany the defendant the next day to sell more ads. She also supported the defendant's testimony that Eikens had left an order book with the defendant at the termination of the April 2 meeting.

Thereafter, on or about April 5, 1958, the defendant sold an advertisement and received in partial payment therefor a check made payable to Key City Marine Maps which he endorsed with that name and negotiated. It was this endorsement which gave rise to the present charge of forgery. The defendant also sold other ads after April 2, 1958, endorsed checks made payable to Key City Marine Maps, and cashed them. He testified that he turned the copy for these ads over to Eikens who accepted them. Eikens denied this, saying that he obtained the copy for these ads with some difficulty from a friend of the defendant after the defendant had been arrested.

■ The defendant challenges the sufficiency of the evidence contending that on the date he endorsed the check in question he was still in the employ of Eikens and consequently was authorized to make the endorsement. It is apparent from the foregoing recital of facts that the evidence, viewed in a light most favorable to the verdict,[1] sufficiently supports the conclusion that the defendant's employment, at least as it related to the solicitation of new advertisements, and his concomitant authority to endorse checks made payable to his employer, was

[1]See, State v. O'Heron, 250 Minn. 83, 87, 83 N. W. (2d) 785, 787; State v. Haynes, 248 Minn. 545, 546, 80 N. W. (2d) 859, 861.

terminated as of April 2. It follows that the defendant's unauthorized endorsement of the check, if coupled with an intent to defraud, constituted the crime of forgery in the second degree.[2]

There undoubtedly may be situations where a person, while technically lacking authority, signs the name of another to a check without entertaining fraudulent intent.[3] Normally, however, a showing that the defendant wrongfully signed another's name to a check without authority establishes a sufficient basis for an inference that the defendant intended to defraud someone.[4] In view of the circumstances established in the instant case, the jury could reasonably infer that the defendant entertained the requisite intent. The verdict is sustained by the evidence.

■ Notwithstanding the fact that defense counsel acquiesced in the trial court's instructions, the defendant now urges that the failure of the court to charge the jury with respect to "waiver and ratification" constitutes reversible error. Even assuming that the defendant's contention may properly be raised on appeal,[5] it is without merit. Condonation or ratification is, generally speaking, no defense to a crime.[6] In Strader v. Haley, 216 Minn. 315, 12 N. W. (2d) 608, relied upon by defendant, we held that the plaintiff ratified the unauthorized signature but clearly pointed out that there was no intent to defraud and hence no crime involved. If the defendant here entertained the requisite intent to defraud, subsequent ratification by Eikens, if there was any, could not constitute a defense. The desired instruction, if given by the trial court, would have been improper.

---

[2]M. S. A. 620.10; see, State v. Bjornaas, 88 Minn. 301, 92 N. W. 980; State v. Stearns, 184 Minn. 452, 238 N. W. 895.

[3]See, e. g., State v. Bjornaas, 88 Minn. 301, 92 N. W. 980 (defendant honestly believed he had right to sign another's name); Strader v. Haley, 216 Minn. 315, 12 N. W. (2d) 608, 150 A. L. R. 970 (defendant did not intend to benefit himself or any third party).

[4]See, 1 Wharton, Criminal Evidence (12 ed.) § 131; 3 Underhill, Criminal Evidence (5 ed.) §§ 773, 778; cf. State v. Bjornaas, 88 Minn. 301, 92 N. W. 980.

[5]See footnote 13, infra; State v. Farmer, 179 Minn. 516, 229 N. W. 789.

[6]1 Wharton, Criminal Law and Procedure, § 125; 2 Wharton, Criminal Law and Procedure, § 647.

■ The court instructed the jury concerning the necessary elements of the offense by charging that it should return a verdict of guilty only if it found that the defendant was not an employee of Key City Marine Maps on the date the check was endorsed and if it found that he intended to defraud. The court then said:

"The intent to defraud in uttering a forged instrument may be presumed from the fact of affixing the signature of the payee to the check by the defendant, unless that presumption has been rebutted or overcome by the evidence which you have heard."

The giving of this latter instruction was erroneous in two respects.

(a) In a series of decisions beginning with Ryan v. Metropolitan Life Ins. Co. 206 Minn. 562, 289 N. W. 557, we have established the rule that presumptions are not of an evidentiary nature but a procedural device which shifts the burden of going forward with the evidence.[7] It follows, and we held in TePoel v. Larson, 236 Minn. 482, 53 N. W. (2d) 468, that, as a general rule, the jury cannot properly be instructed as to the existence of the presumption any more than any other nonevidentiary factor.[8] Since in criminal cases there can be no direction of a verdict for the prosecution,[9] a presumption which operates against the accused may be of little effect. Nevertheless, the rationale of the TePoel case does not differentiate between civil and criminal cases. We do not hold that it would necessarily be error for the trial court to mention to the jury, by way of comment on the

[7]See, also, Roeck v. Halvorson, 254 Minn. 394, 95 N. W. (2d) 172; Lynghaug v. Payte, 247 Minn. 186, 76 N. W. (2d) 660, 56 A. L. R. (2d) 1090; Kath v. Kath, 238 Minn. 120, 55 N. W. (2d) 691; Knuth v. Murphy, 237 Minn. 225, 54 N. W. (2d) 771.

[8]Legislative mandate may, of course, compel a contrary procedure, at least in the absence of constitutional questions. See, e. g., § 602.04 (discussed in Roeck v. Halvorson, 254 Minn. 394, 398, 95 N. W. [2d] 172, 176), which requires an instruction on the presumption of due care in wrongful death cases. It should also be noted that the presumption of innocence "is in a special class of its own." Ryan v. Metropolitan Life Ins. Co. 206 Minn. 562, 571, 289 N. W. 557, 561. See, also, State v. Sailor, 130 Minn. 84, 153 N. W. 271.

[9]State v. Corey, 182 Minn. 48, 233 N. W. 590.

evidence, the permissible inference upon which a presumption is based.[10] As is subsequently noted, however, the instruction in the instant case went substantially further than a comment on a permissible inference, and consequently the propriety of the above-mentioned procedure is not before us.[11]

(b) Secondly, and more important, where specific intent is an essential element of the offense charged, it can never be presumed, at least in the sense that it *must* be found from a given state of facts in the absence of countervailing or rebutting evidence.[12] Like every other essential element of the crime, specific intent must be established beyond reasonable doubt or be reasonably deducible from the evidence. It may not rest on a presumption. As previously mentioned, intent to defraud may be, and normally is, inferred from the established circumstances. But no matter how uncontrovertible the evidence of the intent to defraud may be, the court may not declare that the evidence establishes such intent. Despite the use of the phrase "may be presumed," the instruction here expressly placed upon the defendant the burden of controverting the presumption and, in effect, withdrew from the jury consideration of the good faith of the defendant.

Moreover, the instruction cannot be considered as an unintentional misstatement or verbal error rendered unassailable by defendant's failure to make timely objection.[13] We are not unmindful of the fact that the error was not even assigned in defendant's motion for a new

---

[10]See Gausewitz, *Presumptions,* 40 Minn. L. Rev. 391, 402, where the author suggests that because of the policies expressed in presumptions, the broad rule of the TePoel case should not be "administered in such a way that it would be risky for a judge even to mention the inference * * *."

[11]See State v. Brady, 244 Minn. 455, 462, 70 N. W. (2d) 449, 453, to the effect that the trial court may indicate, under specified circumstances, that certain evidence tends to prove certain facts.

[12]Morissette v. United States, 342 U. S. 246, 72 S. Ct. 240, 96 L. ed. 288; State v. Simon, 163 Minn. 317, 203 N. W. 989; People v. Snyder, 15 Cal. (2d) 706, 104 P. (2d) 639; see, State v. Bjornaas, 88 Minn. 301, 92 N. W. 980.

[13]Compare State v. Billington, 241 Minn. 418, 63 N. W. (2d) 387, with State v. Wilson, 238 Minn. 447, 57 N. W. (2d) 412.

trial.[14] However, where the rights of an accused are substantially and materially prejudiced, procedural requirements cannot be placed before substantive safeguards.[15] Though we may be reluctant to take the action, a new trial must be ordered.

■ The defendant's request for a transcript at the expense of the county pursuant to M. S. A. 611.07, subd. 3, was denied by the trial court. There is no showing that the defendant complied with the requirements of that statute as set forth in our recent decision in State v. Johnson, 255 Minn. 173, 96 N. W. (2d) 389.[16] In any event, since the defendant did acquire the transcript and perfected his appeal, the question is now moot.

In view of the conclusions reached it is unnecessary to discuss the other alleged error which is not likely to occur on retrial. Pursuant to § 611.07, subd. 2, counsel for the defendant is awarded the sum of $200 as and for attorney's fees on appeal.

Reversed and a new trial ordered.

---

[14]See Rule 51 of Rules of Civil Procedure which, although not controlling, may be used as a guide in criminal proceedings. State v. Wilson, 238 Minn. 447, 57 N. W. (2d) 412.

[15]Cf. State v. Sailor, 130 Minn. 84, 90, 91, 153 N. W. 271, 273.

[16]See, also, State v. James, 252 Minn. 243, 89 N. W. (2d) 904, certiorari denied, 358 U. S. 934, 79 S. Ct. 322, 3 L. ed. (2d) 306.