**STATE of Minnesota, Respondent,**

v.

**Jon Clifford JOHNSON, Appellant.**

**No. C4–84–2245.**

Court of Appeals of Minnesota.

Sept. 17, 1985.

Review Denied Nov. 18, 1985.

Hubert H. Humphrey, III, State Atty. Gen., James B. Early and Joel Watne, Sp. Asst. Attys. Gen., St. Paul, William P. Simmons, Jackson, for respondent.

Stephen D. Gabrielson, Fairmont, for appellant.

Heard, considered and decided by POPO-VICH, C.J., and FOLEY and LESLIE, JJ.

## OPINION

FOLEY, Judge.

Jon Johnson appeals his conviction for violating Minn.Stat. § 609.487, subd. 3 (1984), fleeing a police officer in a motor vehicle. The court entered a certificate of conviction on October 1, 1984. Appellant moved for an acquittal or in the alternative for a new trial October 5. The trial court denied the motion on October 19. Appellant filed this appeal December 26.

## FACTS

Appellant Jon Clifford Johnson, a farmer residing in Jackson county, had finished planting a field just before 1:00 a.m. on June 7, 1984. He headed north on Highway 86 through Lakefield toward his home. He was driving his green pickup truck, pulling a trailer full of soybeans. Three police officers were talking at a gas station in Lakefield. Officer Morris followed Johnson's truck for about a quarter of a mile and then stopped him.

Johnson got out of his truck, and Morris asked to see his driver's license. Johnson said he did not carry his wallet when he worked in the fields and he did not intend to change his policy. Here the testimony differs. Johnson testified that Morris said he was going to give him a ticket for "sassing a police officer." Morris claims he said that Johnson might get a ticket for not having a driver's license if he maintained his attitude.

Morris also testified that he told Johnson he did not have reflectors on his grain wagon that night. Johnson testified that Morris did not say anything about reflectors during their conversation. Plaintiff's exhibit 8, a photograph taken at the scene of the original stop, shows reflectors on the grain wagon. Johnson was charged with failing to have reflectors on a trailer, but was acquitted on this charge.

Johnson told Morris he had been working all day and night and that if he was going to give him a ticket, he knew where to find him. Johnson got into his truck and drove off. He claims he intended to drive to his farm for the license. Morris followed in his police car, lights flashing and siren whining. In an effort to stop Johnson, Morris positioned his car in front of Johnson's truck and braked.

Morris described the subsequent contact between the two cars as a "ramming". Johnson said despite his effort to avoid hitting the police car, he "tapped" the vehicle when Morris braked. Morris testified that the ramming occurred three times; Johnson testified that it happened once. The State's photo exhibits indicate that damage to the police car was a broken tail light and a bumper slightly separated from the rear of the car.

Morris also called for help from the other two officers, Chief Dennis Waldron and

Officer Steven Van Hal, who joined in the chase. At one point Morris positioned his car across the right lane of traffic, but Johnson drove around it onto the shoulder. Johnson claims he wanted to avoid a collision.

Johnson testified that his maximum speed was approximately 20 mph, averaging perhaps 16 mph. He claimed that if he drives any faster while pulling a trailer full of beans, he has difficulty controlling his truck. Police officers testified to a variety of speeds. Morris testified that the truck never traveled more than 30 mph. The other officers said the maximum speed was 40–45 miles an hour, often slower, almost stopping at times. The entire chase lasted about 10–15 minutes and covered approximately two and a half miles. Based on these facts, the average speed was less than 15 mph.

Johnson admitted that he knew the police wanted him to stop, but he was tired and frightened. He wanted to get to his farm where he had his driver's license.

Johnson also testified that he knew Morris casually and had spoken to him in the bank on a couple of occasions. Morris testified that he did not know who Johnson was, nor did he have any idea where he lived. Morris also testified that Johnson was driving a silver truck that night. Johnson owns a silver truck, but was driving a dark green truck when the episode occurred.

Linda Johnson, appellant's wife, testified that she approached the accident which she had noticed from her nearby farm to ask if anyone was hurt. Two officers asked her name. She replied, "Linda Johnson." One officer said, "Oh, you're Jon's wife. No, he's ok." Chief Waldron testified that he got Johnson's name when he placed the appellant in the back seat of the police car. Officer Van Hal testified that he found out the driver's name for the first time at the Law Enforcement Center in Jackson.

Johnson finally stopped his truck at a place where the road narrows and there are guard rails on either side, realizing that he could not drive around Morris who was stopped at that place. Officer Van Hal testified that Johnson stopped his truck because Van Hal had fired his gun into the right rear and front tires on Johnson's truck. Van Hal said he fired first at the rear tire, dropped back, believed he missed, again moved forward and fired a shot into the front tire. Again, believing he missed, he fired a third time, at the front tire.

Bruce Knutson, who lives on the farm closest to where the incident occurred, testified that he woke at about 2:00 a.m., heard a dog barking and then heard three shots fired in rapid succession. Johnson testified that after he stopped his truck, the officer fired three shots into his tires.

Darrel Hage, operator of the wrecking service that towed the truck away, examined the tires and testified that the "beads" on the flat tires were not broken. (The bead seals against the edge of the tire rim to hold the air.) Based on his 37 years of experience, Hage testified that the beads on the type of tire on Johnson's truck could run flat for only about five revolutions before the beads would break.

A jury found Johnson not guilty of driving without reflectors and guilty of fleeing a police officer in a vehicle. Johnson was fined $700 and sentenced to six months in jail. Appellant's motion for a new trial based on insufficient evidence to sustain the conviction was denied. This appeal followed.

### ISSUE

Did the trial court err in failing to instruct on the element of specific intent in Minn.Stat. § 609.487?

### ANALYSIS

■ Ordinarily, where no objection is made to the jury instruction, the alleged error must be one of fundamental law or controlling principle, and it must substantially and materially prejudice the defendant's rights. *State v. Duemke,* 352 N.W.2d 427, 432 (Minn.Ct.App.1984); *Peterson v. State,* 282 N.W.2d 878, 881 (Minn.1979).

In *State v. Higgin,* 257 Minn. 46, 99 N.W.2d 902 (1959), the supreme court reversed a criminal conviction because the court gave an erroneous instruction regarding specific intent. The defendant had neither objected to the instruction at trial, nor had he raised it as an error in a motion for a new trial. Nonetheless, the supreme court stated:

> We are not unmindful of the fact that the error was not even assigned in defendant's motion for a new trial. However, where the rights of an accused are substantially and materially prejudiced, procedural requirements cannot be placed before substantive safeguards. Though we may be reluctant to take the action, a new trial must be ordered.

*Id.* at 52–53, 99 N.W.2d at 907.

■ As a general rule, the court has an obligation to clearly instruct the jurors on exactly what they must decide. Some minimal attempt to explain the elements of the offense rather than a simple reading of the statute is desirable. *Rosillo v. State,* 278 N.W.2d 747, 749 (Minn.1979).

■ Detailed instructions need not be given "if the instructions *do not mislead the jury or allow it to speculate over the meaning of the elements.*" *State v. Heinzer,* 347 N.W.2d 535, 537 (Minn.Ct.App. 1984) (emphasis added).

■ We believe that the court's failure to instruct on the meaning of specific intent was a fundamental error because in the context of the whole charge, the omission substantially prejudiced Johnson's case.

Minn.Stat. § 609.487, subd. 1 defines "flee" for the purposes of fleeing a police officer in a motor vehicle. "[F]lee means to increase speed, extinguish motor vehicle headlights or taillights, or to use other means *with intent to attempt to elude* a peace officer following a signal given by any peace officer to the driver of a motor vehicle." (Emphasis added.) The trial court here included this definition of "flee" in its instructions.

The court also defined "elude" in its jury charge by the common dictionary definition: "to avoid or escape from by quickness, cunning, etc., to evade, to escape detection, notice or understanding." However, other than reading the statutory language that the accused must use "means with the intent to attempt to elude," the court gave no instruction on "intent."

"With intent to" means that a person "has a purpose to do the thing or cause the result specified, or believes that his act, if successful, will cause that result." Minn. Stat. § 609.02, subd. 9(4) (1984).

■ Every element of a crime must be established beyond a reasonable doubt. *State v. Higgin,* 257 Minn. 46, 99 N.W.2d 902 (1959). A person's intent must be determined from his words, if any, and actions in light of all the surrounding circumstances. *State v. Whisonant,* 331 N.W.2d 766 (Minn.1983). Circumstantial evidence of specific intent will support a conviction only where the facts disclosed by it support no other inference.

> Where the facts and circumstances disclosed by circumstantial evidence form a complete chain which, in the light of the evidence as a whole, leads so directly to the guilt of the accused as to exclude, beyond a reasonable doubt, any reasonable inference other than that of guilt.

*State v. DeZeler,* 230 Minn. 39, 52, 41 N.W.2d 313, 322 (1950).

Intent is a subjective state of mind and is usually established by reasonable inferences drawn from surrounding circumstances. *State v. Schweppe,* 306 Minn. 395, 237 N.W.2d 609 (1975). A person's words are also relevant in making this determination. *State v. Lundstrom,* 285 Minn. 130, 171 N.W.2d 718 (Minn.1969).

Here, Johnson's defense rested on his words and actions, along with the surrounding circumstances which challenged the conclusion that he "intended" to flee the officer. Johnson said he had a driver's license at home, and if Morris wanted to write a ticket, he knew where to find him.

There is also testimony indicating Morris knew who Johnson was. Johnson said he had spoken to Morris in the bank. Two officers knew when Linda Johnson identified herself just after they put Johnson in the police car that she was "Jon's" wife. There is conflict as to when appellant's name was taken by the police. Morris knew Johnson owned a silver truck even though the night of Johnson's arrest, he was driving a dark green truck.

The crucial issue here was whether "intent" was proved beyond a reasonable doubt. Appellant's entire defense went to the question of intent. We believe that Johnson was entitled to an instruction on "intent" and also one on circumstantial evidence. To include definitions of "flee" and "elude," but to ignore the essential element of intent in the jury charge could only have misled the jury. The court emphasized the terms "flee" and "evade," allowing the jury to speculate over the meaning of "intent." The result substantially prejudiced the rights of the accused.

In reversing, we do not condone Johnson's reactions to the police conduct. The record reflects not only poor judgment of a tired farmer but serious overreaction by the officers, leading to a road block and shooting out the tires of a slow-moving vehicle. The entire matter got out of hand. This is not to say that other more appropriate charges could not have been brought, such as assault or failing to stop at the signal of an authorized emergency vehicle. We need not speculate on why these charges were not filed.

### DECISION

Because the essential element of intent was ignored in the jury charge, while the instruction emphasized the terms "flee" and "elude," we believe that Johnson's rights were substantially prejudiced. We reverse the trial court's denial of appellant's motion for a new trial. In reversing, we emphasize that our holding is limited to the peculiar facts of this case.

Reversed and remanded for a new trial in accord with this decision.