**STATE of Minnesota, Respondent,**

v.

**James R. CLOBES, Appellant.**

**No. C7-87-1606.**

Court of Appeals of Minnesota.

Jan. 12, 1988.

Review Granted March 23, 1988.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Robert Johnson, Anoka Co. Atty., Marcy S. Crain, Asst. Co. Atty., Anoka, for respondent.

Phillip S. Resnick, Minneapolis, for appellant.

Heard, considered and decided by RANDALL, P.J., and HUSPENI and STONE,* JJ.

## OPINION

RANDALL, Judge.

Appellant James Clobes was found guilty of assault in the second, third and fifth degrees. He petitioned for postconviction relief and a new trial. Appellant claimed the jury instructions were incorrect, the prosecutor failed to disclose possible exculpatory evidence, and he received ineffective assistance of counsel. The trial court denied his motion. We reverse and remand for a new trial on the issue of failure to disclose.

### FACTS

In February 1986 appellant introduced Sherri Luoma, with whom he was living, to David Fashingbauer. Appellant and Fashingbauer were both competitive body builders and had known each other for approximately four years. Luoma and Fashingbauer started to date soon after they met.

On March 20, 1986, appellant assaulted Fashingbauer, who was waiting for Luoma to retrieve her daughter from school. Appellant hit Fashingbauer over the head several times with an eight inch metal ratchet. Fashingbauer was treated for lacerations to the head, whiplash, and a concussion.

Appellant's version of the incident was that on March 20, 1986, his home was burglarized. Since entry had been by key, he assumed the perpetrator was Luoma. He knew when Luoma usually picked up her daughter from school, and went to confront her about the burglary. Appellant testified that when he approached Luoma's car, Fashingbauer jumped out and started swinging at him. Appellant said a ratchet, which was in his pocket, fell to the ground; Fashingbauer grabbed it and attempted to strike him. Appellant testified he wrestled the ratchet away and struck Fashingbauer in self-defense.

Fashingbauer testified that appellant opened the car door, grabbed him by the shoulder, and accused him of entering his home. Fashingbauer said he got out of the car and pushed appellant away. He then saw two other men approach him. One of them was appellant's brother. Fashingbauer testified that appellant took a ratchet

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

out of his clothes and threatened him with it, so he ran towards the school. He was then held up against the building by one of the men, and hit over the head repeatedly with the ratchet.

The owner of Viking Gyms, Inc. testified he saw appellant two days after the incident. When he asked whether appellant had attacked Fashingbauer, appellant answered "[H]e took a swing at me, and I beat the shit out of him."

Fashingbauer testified he had taken the steroid Anavar the day of the assault, but claimed it did not cause him to be moody or aggressive. He said he took steroids to prepare for body-building contests, but denied they had any psychological impact on him. An expert witness testified on the effects of steroid use. The doctor said the degree of psychological effect caused by steroids depends on the amounts taken, over what period of time these amounts were taken, the person's drug history, and how the user's body breaks drugs down.

The night before she was to testify, Luoma telephoned the prosecuting attorney. Luoma told her that Fashingbauer committed perjury about his use of steroids, that he used more than he admitted, and his moods changed when he used them. The prosecutor did not inform defense counsel or the court of Luoma's phone call.

Luoma was a witness at the trial. Although she testified to her observations of Fashingbauer when Fashingbauer took steroids, the defense did not have available for possible use the allegations she had discussed with the prosecutor.

At the conclusion of the evidence, the jury was instructed as to the definitions and elements of self-defense and assault in the first, second, third and fifth degrees. No separate instructions defining "specific intent" were requested or included, and neither attorney objected to the instructions at the time. Guilty verdicts were returned to charges of assault in the second, third and fifth degree.

After trial, Luoma informed appellant's defense counsel of her earlier conversation with the prosecutor. Immediately, defense counsel started preparing a motion for postconviction relief and, in preparation of the motion, took Luoma's deposition. In the deposition, defense counsel asked about the contents of the phone call between Luoma and the prosecution. Luoma stated that Fashingbauer used at least three types of steroids prior to the assault, and that he had asked her to lie about his use of steroids. The contents and nondisclosure of that phone call frames the issue before this court.

A postconviction hearing was held in February 1987. Appellant claimed that what Luoma disclosed to the prosecutor on Fashingbauer's drug use was exculpatory evidence, which the prosecutor had a duty to disclose to the defense. The prosecuting attorney testified she did not disclose the conversation to the defense attorney because she made an independent determination that Luoma had no factual basis for the statements she made over the phone about Fashingbauer and his drug use. The prosecutor said that, although she would agree Luoma thought Fashingbauer committed perjury and told her so, she decided for herself that Luoma was unable to articulate anything specific to support those accusations, and therefore Luoma's allegations of Fashingbauer's perjury were not credible. The prosecutor further testified that, since Luoma's telephone conversation did not appear to contain anything of first hand knowledge of Fashingbauer's steroid use, Luoma's information was basically irrelevant, and that led to the decision to inform no one of the phone call.

The prosecutor's postconviction hearing testimony was, in part, as follows:

[Luoma] told me that she thought David Fashingbauer had committed perjury when he had testified.

[Luoma] also said at one point that she wasn't going to commit perjury for him, and I said, "Nobody wants you to commit perjury. You have to tell the truth."

[I then asked her] [w]hy she thought David Fashingbauer was committing per-

jury. And her response was something along the lines, "I just know." And I pursued it further, saying "How do you know?" And she wasn't able to articulate it at that time.

[S]he told me that prior to the assault on March 27 she had not seen Fashingbauer take any steroids herself; that she had seen him take steroids after the assault.

The trial court, in its memorandum, found Luoma's belief that Fashingbauer perjured himself not to be of such significance that the failure to disclose denied appellant a fair trial. Appellant's motion for postconviction relief was denied, and this appeal followed.

### ISSUES

1. Did the trial court err in failing to instruct the jury on the element of "specific intent" in connection with the assault instructions?

2. Did the trial court properly instruct the jury on self-defense?

3. Did the trial court err in denying appellant a new trial based on the prosecutor's failure to disclose evidence to defense counsel that the victim allegedly committed perjury?

4. Did the trial court err in determining defense counsel's conduct did not constitute ineffective assistance of counsel?

### ANALYSIS

### I.

#### *"Specific intent" instructions*

The trial court gave the jury the standard instructions for assault in the second, third and fifth degrees. The court defined assault as "whoever intentionally inflicts or attempts to inflict bodily harm upon another." Appellant argues that with no definition of specific intent, the jury had no standard by which to make a decision. The trial court found the jury instructions were drafted with the cooperation and agreement of both attorneys, and were not erroneous.

■ Generally, the court has an obligation to clearly instruct the jurors on exactly what they must decide and should make "[s]ome minimal attempt to explain the elements of the offense * * *." *State v. Johnson,* 374 N.W.2d 285, 288 (Minn.Ct. App.1985) *pet. for rev. denied* (Minn. Nov. 18, 1985) (citing *Rosillo v. State,* 278 N.W. 2d 747, 749 (Minn.1979)). Elements that are stated correctly, although without detailed definitions or explanations, are not erroneous as a matter of law. *Peterson v. State,* 282 N.W.2d 878, 881 (Minn.1979).

■ We conclude that even without a definition of specific intent in the assault instructions, there was no error of fundamental law or controlling principle, and the instructions given did not prejudice appellant's rights. The trial court's jury instructions, viewed in their entirety, explained the law of the case fairly and accurately. *State v. Jones,* 347 N.W.2d 796, 801 (Minn. 1984).

### II.

#### *Self-defense instructions*

The trial court's instructions on self-defense, in accordance with 10 Minnesota Practice, Crim.Jig, 7.07 (1985), were as follows:

If defendant began or induced the incident which led to the necessity of his using force in his own defense, the right to stand his ground and thus defend himself is not immediately available to him, but instead, he must first have declined to carry on the affray and have honestly tried to escape from it, and he must clearly and fairly have informed his adversary of his desire for peace and of his abandonment of the contest. Only after he has done that will the law justify him in thereafter standing his ground and using force upon the other person.

■ Appellant argues that the jury could have thought, pursuant to these instruc-

tions, that appellant commenced the incident simply by approaching the car in which Fashingbauer was sitting, and therefore he did not have the immediate benefit of the defense of self-defense. Appellant believes the court allowed the jury to decide an element of the crime, that of who was the aggressor, by using a lesser standard than "beyond a reasonable doubt." Appellant contends an instruction worded "If you find defendant began or induced the incident beyond a reasonable doubt, * * * " would have been appropriate.

We conclude the self-defense instructions given were adequate. The instructions consisted of words of ordinary meaning, which should not have mislead the jury. The jury was told several times that the state had the burden of proving beyond a reasonable doubt that appellant did not act in self-defense. We find no error in the self-defense instructions.

### III.

*Failure to disclose evidence to defense counsel*

Appellant contends the state failed to disclose exculpatory evidence to defense counsel that contradicted the assault victim's testimony. Appellant believes the undisclosed information calls Fashingbauer's credibility into question, strengthens appellant's defense, and, as a matter of law, should have been disclosed to the defense. The state argues the probability of the trial having a different outcome if the information were disclosed is virtually nil.

■■■ We hold the prosecutor should have informed defense counsel of her conversation with Luoma. A prosecutor has a constitutional duty to volunteer material exculpatory matter to the defense. *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). In effect, this rule is a restatement of the due process rights of an accused. *State v. Renier,* 373 N.W. 2d 282, 287 (Minn.1985). Constitutional error occurs when the omitted evidence cre-

ates a reasonable doubt that did not otherwise exist. *Agurs,* 427 U.S. at 112, 96 S.Ct. at 2401. Therefore, the conviction must be set aside if there is any reasonable likelihood that the testimony affected the jury's judgment. *Id.* at 103, 96 S.Ct. at 2397.

We do not understand the prosecution's reluctance to disclose the contents of the phone call to defense counsel, if for no other reason than to "protect the record." The prosecutor had nothing to lose by disclosing the information. Even though her personal opinion was that it was "not important" or "not credible," she does not weaken the state's case or impinge on her own right to prosecute by revealing it.

"Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Under the strict mandate of *Brady,* it is not conducive to due process for the prosecution to independently attempt to assess the relative strength and weakness of the defendant's case and disclose only that exculpatory evidence that the prosecutor feels is "relevant." It is not possible for a prosecutor to make an independent determination of whether exculpatory information is helpful to a defendant. The prosecutor never knows exactly what information a defendant knows, or what trial tactics a defendant is to employ.

■■■ A fair reading of the due process requirement leads us to hold that, on these facts, the prosecutor had a duty to disclose the contents of Luoma's phone call to the defense attorney and let the defense make its own decision as to what to do with it. When a prosecutor must decide, before or during trial, on the significance of non-disclosed evidence, "the prudent prosecutor will resolve doubtful questions in favor of disclosure." *Agurs,* 427 U.S. at 108, 96 S.Ct. at 2399.

■■■ It cannot clearly be shown that the prosecutor's failure to disclose resulted

in harmless error to appellant. The subject matter of the conversation between the prosecutor and Luoma, perjury by the principle complaining witness, was too serious and struck too closely to the heart of the judicial system for the prosecutor to make an independent determination not to disclose it to the defense attorney. In addition, it would have been desirable and prudent for the prosecutor to have immediately informed the court, in camera, as to the phone call. Then, at an in-chambers motion, the prosecutor could have made her arguments as to the unworthiness and irrelevancy of the information, but it would have been disclosed, and both sides would now have equal access to whatever knowledge Luoma possessed.

On this issue we reverse and remand for a new trial.

## IV.

*Ineffective assistance of counsel*

Because we are remanding for a new trial on the issue of failure to disclose, the question of ineffective assistance of counsel at the first trial is moot. However, to put the matter to rest, we note that our examination of the trial transcript and the record leaves us with a firm conviction that, pursuant to the guidelines set out in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), appellant was not denied effective assistance of counsel.

## DECISION

The failure to instruct the jury on "specific intent" was not an error of fundamental law or controlling principle. The jury instructions on self-defense were adequate and did not improperly alter the state's burden of proof. The prosecutor erred by making an independent determination not to disclose evidence to defense counsel of the victim's alleged perjury. Appellant received effective assistance of counsel.

Reversed and remanded for a new trial.