## STATE v. THOMAS CHARLES MELDAHL.

245 N. W. 2d 252.

August 20, 1976—No. 46163.

*Connolly & Heffernan* and *John S. Connolly,* for appellant.

*Warren Spannaus,* Attorney General, *William B. Randall,* County Attorney, and *Steven C. DeCoster,* Assistant County Attorney, for respondent.

Heard before Kelly, Todd, and Scott, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

This is an appeal from a conviction in Ramsey County District Court for robbery under Minn. St. 609.24, based on the jury's verdict of guilty, and from an order denying a motion for a new trial. The defendant, Thomas Charles Meldahl, was committed for a maximum sentence of 10 years to the custody of the commissioner of corrections.

Mrs. Mary Lou Acheson was working at the Li'l General Store, a convenience food store on County Road E in White Bear Lake, Minnesota, at about 11 p. m. on October 11, 1974. While she was restocking some shelves in the back of the store, she saw a youth

at the checkout counter waving a bag of Fritos. Mrs. Acheson went to the counter. As the youth asked about the price of the Fritos, another youth stood up from behind the opposite counter with the point of a gun sticking out from his shirt. The youth with the gun told her not to move and to get the money. The first youth ripped out the phone cord. They took a bag containing about $150 and ran out of the store. They had nothing covering their faces. The store was well lighted.

Mrs. Acheson initially described the robbers as being quite young, one about 5 feet 7 inches tall with blond hair, the other shorter with dark hair and eyes. She stated that the same boys had been in the store earlier that night. The police showed Mrs. Acheson yearbooks from the two high schools in White Bear Lake, but she was unable to make any identification.

On November 2, 1974, Mrs. Acheson spotted two youths at the McDonald's Restaurant in White Bear Lake. She took down their license number and reported the sighting to police. One week later she was shown photographs of 16 youths from which she identified both defendants. Robert Emanuel was identified as the boy who held the gun. He and the defendant were arrested on November 20, 1974, and found guilty in a jury trial in March 1975.

In June 1975, Mrs. Acheson saw another youth at her new place of employment and informed police 2 weeks later that this youth was actually the one who held the gun. Identification of this youth was made from a Mahtomedi High School yearbook which the police showed Mrs. Acheson. As a result of this identification Robert Emanuel was released from custody. When she informed the police about misidentifying Emanuel, Mrs. Acheson expressed no doubt as to her identification of defendant.

During defendant's trial Mrs. Acheson had asked the presiding judge whether she could hear defendant's voice. She was not allowed to do so. Later she overheard his voice as he talked to the bailiff when leaving the courtroom, and she felt that it was not similar to the low voice she had heard during the robbery.

On August 13, 1975, a hearing was held on a defense motion for new trial based on newly discovered evidence. The court denied the motion, stating:

"I don't classify her [Mrs. Acheson's] stating that she now believes that it was not Mr. Emanuel but somebody else as new evidence to be used in the trial of Mr. Meldahl."

The issue presented is: Did the trial court abuse its discretion in denying a new trial where the only witness had misidentified the other person accused of the crime.

The decision of a trial court on a motion for new trial will not be disturbed on appeal except upon a showing of a clear abuse of discretion. It must be shown that newly discovered evidence would materially affect the result and could not have been discovered before trial by due diligence. State v. Klotter, 274 Minn. 58, 142 N. W. 2d 568 (1966); 14A Dunnell, Dig. (3 ed.) § 7131.

In the instant case, Mrs. Acheson, the only witness, on the basis of her later independent observations and in the absence of any form of coercion, repudiated her testimony regarding the identification of the other accused, Emanuel. This situation is analogous in some respects to the circumstances in State v. Warren, 252 Minn. 261, 89 N. W. 2d 702 (1958). In that case, the defendant had been convicted of robbery based on the identification of a 15-year-old boy who had spent 12 hours in an automobile with two men who he said robbed him. The driver, who the boy said was a tall, thin Indian with whom he had been acquainted, was not apprehended prior to trial, but the defendant was identified by the boy. After trial the defendant's attorney discovered a man who fit the description of the driver. The boy upon seeing this person admitted he was his acquaintance but said he was not the driver. In reversing the trial court's refusal to grant a new trial, this court said:

"* * * The complaining witness was admittedly completely wrong in his identification of the driver. The margin for error as to the identification of the passenger is much greater. Had

the jury known how wrong the witness was in his identification of the driver, it is doubtful that they would have believed his testimony with reference to the identification of the defendant." 252 Minn. 266, 89 N. W. 2d 706.

The court also stated:

"It is our view that the evidence against the defendant in this case is so tenuous that the new evidence will in all likelihood change the results on a new trial." 252 Minn. 265, 89 N. W. 2d 706.

There is a difference between the Warren situation and the case here in that the testimony of the complaining 15-year-old witness in the Warren case also was implausible for reasons which had no relation to the identification of the defendant. In Warren, nevertheless, the defendant had been found guilty at trial, and the misidentification of an accomplice was found by this court to be sufficient grounds to order a new trial.

In the instant case, the evidence against the defendant is also tenuous. The only testimony connecting the defendant with the crime was that of the witness, Mrs. Acheson, who, on her own, discovered another suspect and is now certain that one of the identifications she made was completely wrong. If this information had been presented to a jury at the original trial, it is doubtful whether it would have found beyond a reasonable doubt that the defendant was guilty of robbery. The witness viewed both defendants together for the same period of time in the same location and lighting. She misidentified the person who pointed the gun at her. At trial Mrs. Acheson expressed doubt as to whether the defendant's voice matched that of the robber. The trial court did not let the witness hear the defendant's voice. Whether or not this refusal constituted a violation of due process, it is apparent that there was some doubt in Mrs. Acheson's mind at trial regarding the defendant's identity. This doubt, coupled with the recanting of the witness' identification of the other defendant, justifies a new trial.

The crime took place on October 11, 1974. No identification was made for 3 weeks. In identifying the two boys in the McDonald's Restaurant, Mrs. Acheson emphasized the fact that seeing the two youths together had aided her identification. She was unable to identify the defendant in the White Bear area high school yearbooks she was shown after the crime, although both he and Emanuel attended those schools. The person Mrs. Acheson later identified as the accomplice who had held the gun attended a different high school. At the hearing on the motion for new trial, Mrs. Acheson admitted:

"* * * I made a mistake once, I could have done it again. I'm not saying I have. I'm just saying I don't know anymore."

Because this court has decided to grant a new trial on the basis of newly discovered evidence, it is not necessary to discuss other issues raised by the defendant.

Reversed and remanded.