**STATE of Minnesota, Respondent,**

v.

**Ronald Raymond ERDMAN, Appellant.**

**No. C7–85–1648.**

Court of Appeals of Minnesota.

March 11, 1986.

Review Denied April 24, 1986.

Hubert H. Humphrey, III, Atty. Gen., Janet A. Newburg, Sp. Asst. Atty. Gen., St. Paul, Larry Mickelberg, Clay Co. Atty., Moorhead, for respondent.

C. Paul Jones, Minn. State Public Defender, Mary C. Cade, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by LESLIE, P.J., and PARKER and CRIPPEN, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

Ronald Erdman was charged with speeding, disobeying a stop sign, attempting to flee or elude a police officer while driving a motor vehicle, and careless driving. The careless driving charge was dismissed before trial, and Erdman appeals from convictions for speeding and fleeing a police officer and from an order denying a new trial. We affirm.

## FACTS

At approximately 9 a.m. on February 7, 1985, State Trooper Richard Mosca was driving north on Highway 9 in Clay County, clocking southbound vehicles with radar. The audio alarm on his radar unit indicated that an approaching vehicle was traveling 69 miles per hour. As the speeding vehicle approached him, Mosca recognized the driver as Erdman. Mosca testified that the two made eye contact; Erdman testified that he continued to look straight ahead as he passed Mosca.

Mosca testified that he turned his vehicle around in time to see Erdman passing the car that had been traveling in front of him. Mosca activated his flashing grill lights, but not his siren or overhead lights. Erdman turned off Highway 9 onto County Road 55, a gravel road. Mosca followed him, accelerating in an attempt to catch up to Erdman. Mosca testified that very little dust was kicked up by Erdman's vehicle as Mosca pursued him down County Road 55.

County Road 55 ends in a "T" intersection with a stop sign. Mosca testified that

Erdman proceeded through the intersection without stopping, fishtailing as he made the turn. By the time Mosca reached the intersection, Erdman had pulled into the driveway of his home.

Mosca pulled into the driveway about 15 seconds later. Erdman was not in the car. Mosca testified that he knocked on Erdman's door several times, but there was no response. Mosca activated his siren; there was still no response.

Mosca waited for a few minutes, then drove into town and telephoned Erdman; the line was busy. Mosca telephoned Erdman several more times that day, but the line was always busy (Erdman's telephone was out of order or disconnected at the time). Mosca returned to Erdman's home again the same day, but Erdman's car was not in the driveway.

Erdman testified that he had met a squad car traveling north on Highway 9. He claimed, however, that he did not pass any car on Highway 9 and that he did not see Mosca either following or pursuing him. He said that the dust on County Road 55 was very heavy and he could never have seen anything behind him; that he stopped at the stop sign; and that upon entering his home he immediately got into the shower and did not hear anyone knock or hear a siren. Erdman stated that the first time he learned Mosca wanted to talk to him was six days after the incident.

Erdman called 12 witnesses including his sister, Shirley Lohse, who surprised the defense by testifying that Erdman told her, on the day of the incident or the day after, that a trooper had been following him, but because the trooper did not have his lights on, Erdman did not stop. Lohse also testified that Erdman told her he heard Mosca knock on the door but did not answer because he was in the bathroom.

Upon conviction, Erdman moved for a new trial on numerous grounds. The trial court denied the motion, sentenced Erdman, and subsequently stayed execution of the sentence until resolution of this appeal.

**ISSUES**

1. May appellant challenge the trial court's failure to instruct the jury on specific intent in a prosecution under Minn. Stat. § 609.487 absent a request for a specific intent instruction?

2. Did the trial court err in denying appellant a new trial on the ground that the State violated a witness sequestration order?

3. Did the trial court err in denying appellant a new trial on numerous other grounds asserted by him?

**DISCUSSION**

**I**

Erdman did not object to the court's instructions or request an instruction on specific intent. When no objection to the jury instructions is made, an appellate court will consider the claim only if the alleged error in the instructions was one of fundamental law or controlling principle. *Peterson v. State*, 282 N.W.2d 878, 881 (Minn.1979). Except for *State v. Johnson*, 374 N.W.2d 285 (Minn.Ct.App.1985), we have not been cited to any case in which failure to give a specific intent instruction constituted "fundamental error." In *Johnson*, which was also a prosecution for fleeing or eluding a police officer under § 609.487, we held that under the peculiar facts of the case, failure to instruct the jury on the element of specific intent was an error of fundamental law.

In *Johnson* a farmer pulling a trailer full of soybeans at a speed of approximately 15 miles per hour was "pursued" by three officers who, it was alleged, "seriously overreacted" to the situation, ultimately shooting out the defendant's tires. The facts present in this case do not even approximate the situation in *Johnson*. We decline to extend *Johnson* to these facts and hold that failure to request a specific intent instruction in a prosecution under § 609.487 precludes review of any claimed error on this point. *See State v. Kutchara*, 350 N.W.2d 924, 927–28 (Minn.1984).

## II

The State moved for sequestration of the witnesses prior to their testimony pursuant to Minn.R.Crim.P. 26.03, subd. 7. The trial court did not explicitly rule on the motion, but the record makes clear that the trial court thought a sequestration order was in effect.

Erdman presented affidavits to the trial court at the motion for a new trial indicating that Mosca had spoken to Shirley Lohse before she testified in the case. The trial court ruled that "there is nothing to indicate that * * * Shirley Lohse['s] * * * testimony was based upon threats by officer Mosca."

■ There must be an indication in the record that statements made in violation of a sequestration order were made in an attempt to influence the testimony of other witnesses, or that the statements did influence the testimony of other witnesses, before the trial court need even consider it as grounds for a new trial. *State v. Johnson,* 324 N.W.2d 199, 201 (Minn.1982). Prejudice resulting from violation of a sequestration order must be shown. *State v. Bergland,* 294 Minn. 558, 202 N.W.2d 223 (1972). Here, Erdman did not demonstrate anything more than a potential violation of the sequestration order.

Our review of this issue has been hampered by the vague nature of this sequestration order. The record does not reveal any definite ruling by the trial court on the motion, nor any specific provisions of the order such that the parties could understand what was prohibited. We think it essential that trial courts make definite rulings on sequestration motions and specifically set out, on the record, the type of sequestration, how it will be effected and to whom it will apply. Such a procedure will limit claims that one party or another violated an unclear sequestration order and will aid appellate review.

## III

Erdman appeals several additional issues which were raised in his motion for a new trial. We find that none of them justifies granting a new trial:

■ The testimony of Mosca and Shirley Lohse provided sufficient evidence to sustain the convictions, should the jury choose to believe their testimony. *State v. Merrill,* 274 N.W.2d 99, 111 (Minn.1978). As to evidence of intent, the jury could properly conclude that Erdman's failure to answer Mosca's knock at the door indicated that he had intended to flee from Mosca when he was driving home, especially after Erdman's sister testified that he knew Mosca was following him and that he heard the knock on the door. *See State v. Whisonant,* 331 N.W.2d 766 (Minn.1983) (intent may be determined from a person's actions in light of surrounding circumstances). The evidence is therefore sufficient to sustain the convictions.

■ It was not an abuse of discretion for the trial court to deny Erdman's motion for continuance made five days before trial date, because the court had already granted a previous motion for continuance made on the eve of Erdman's first scheduled trial date. *See State v. Turnipseed,* 297 N.W.2d 308, 311 (Minn.1980).

■ Erdman's sixth-amendment right to confront witnesses was not violated when the trial court denied his motion to take a pretrial deposition of the complaining officer, because the officer was available to testify, and did so, at trial. *California v. Green,* 399 U.S. 149, 157, 90 S.Ct. 1930, 1934–35, 26 L.Ed.2d 489 (1970) (right guaranteed by confrontation clause is that of confronting the witness at the time of trial).

■ The trial court did not abuse its discretion in refusing to admit portions of Erdman's photographic exhibit, because there was a factual dispute regarding whether the photos accurately portrayed the dust conditions of County Road 55 on the date of the offense because the photos were not actually taken on or about the date of the offense. *See State v. DeZeler,* 230 Minn. 39, 40, 41 N.W.2d 313, 319 (1950).

■ Erdman claims he was denied effective assistance of counsel under the sixth

amendment because his attorney failed to object to both a minor misstatement of Erdman's testimony by the prosecutor and the prosecutor's argument that the jury would have to "find out which [story, Erdman's or the State's] is true beyond a reasonable doubt." Neither of these asserted errors "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, ——, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

 Nor can the response of Erdman's counsel to Lohse's surprise testimony be said to constitute ineffective assistance. He argued to the jury that Lohse was confused, and there is no indication in the record that Erdman's attorney was even aware at the time of trial of the animosity and bias Erdman now claims his sister, Lohse, has against him.

### DECISION

Erdman cannot challenge the absence of a specific intent instruction when he did not request one. There is no indication that any asserted violation of the sequestration order prejudiced Erdman. None of Erdman's other claims of error merit granting him a new trial.

Affirmed.