STATE of Minnesota, Appellant,

v.

Ronald Raymond ERDMAN,
Respondent.

No. C0–87–1009.

Supreme Court of Minnesota.

April 29, 1988.

Rehearing Denied June 3, 1988.

Hubert H. Humphrey, III, Paul R. Kempainen, St. Paul, Larry Mickelberg, Clay County Courthouse, Moorhead, for appellant.

James D. Sandsmark, Alan J. Sheppard, Fargo, N.D., C. Paul Jones, State Public Defender, Minneapolis, for respondent.

## OPINION

AMDAHL, Chief Justice.

We granted the state's petition for review to determine whether the court of appeals erred in granting defendant a new trial on the basis of a witness' recantation of her trial testimony. Holding that the court of appeals erred, we reverse the award of a new trial and reinstate defendant's conviction of the gross misdemeanor offense of fleeing a peace officer, Minn. Stat. § 609.487, subd. 3 (1986).

The state's main witness at defendant's trial in 1985 was a state trooper, Richard Mosca. He testified that he clocked defendant driving at 69 miles per hour in a 55 mile per hour zone; that he made eye contact with defendant, whom he knew, as defendant drove past him; that he gave chase in his car with the red grill lights flashing but no siren or overhead lights on; that defendant passed another car, then turned onto a county road with a gravel surface; that the little dust that was kicked up could not have prevented defendant from seeing the flashing grill lights; that defendant drove at a high speed on the road until he came to a stop sign at a T-intersection with a township road; that defendant did not stop at this intersection but did a fishtail left turn; that when the officer made the turn 10 to 15 seconds later he could see defendant's car pulling into

the driveway of the trailer home where defendant lived; that defendant did not answer the door in response either to loud knocking or to the siren, which the officer activated in order to get defendant's attention; and that after 15 minutes of trying to get defendant to come to the door, the officer got in the car and drove to town and unsuccessfully tried a number of times to reach defendant by phone, getting a busy signal each time.

Defendant testified that he did not know the officer was following him and that once he was in his house he quickly got in the shower and did not hear anyone knocking on the door. Defendant also called a number of friends and relatives, some of whom testified that they saw parts of the incident on which the charges were based. For example, one friend testified that he saw the officer following defendant on the gravel road and that the officer did not have any flashing lights on. Defendant's sister, Shirley Lohse, surprised the defense by testifying on cross-examination by the state that defendant had told her after the incident that he knew the trooper was following him, that he did not stop because the trooper did not have his lights on, and that after he got home he heard the trooper knock on his door but he was in the bathroom and did not answer. Defendant testified that he said something like this to his sister but was joking when he said it. The jury acquitted defendant of running a stop sign but found him guilty of speeding and fleeing a peace officer.

The court of appeals affirmed the convictions in 1986, and we denied defendant's petition for review. *State v. Erdman*, 383 N.W.2d 331 (Minn.App.1986), *petition for review denied* (Minn., filed April 24, 1986).

Immediately after we denied the petition for review, defendant moved for a new trial, claiming that he had newly discovered evidence impeaching the trooper's testimony. Among the affidavits he submitted in support of his motion was one from his sister, Shirley Lohse, in which she said that her trial testimony was inaccurate, that she really had just recounted what was said when defendant's friends were teasing defendant "about his being on the stool" when the trooper knocked on the door. The trial court denied the motion.

In February 1987 defendant filed another motion for a new trial. This time Shirley Lohse claimed, both in an affidavit and in her subsequent testimony at a hearing, (a) that trooper Mosca had threatened her before she testified, telling her she had better lie on the stand, and (b) that she did lie when she testified on cross-examination as to what defendant had said. Trooper Mosca testified that he had not threatened Lohse or told her to lie. Both he and his wife also testified that Lohse's husband, who also testified for defendant at trial, had subsequently told them that he was sick and tired of lying for defendant.

The trial court treated the motion as a petition for post-conviction relief and denied it. The trial court specifically stated in a memorandum that it did not think that Lohse's recantation was genuine (and explained why) and that it did not think the jury might have reached a different result without her testimony at trial.

The court of appeals, in an unpublished opinion, said that it agreed with the trial court's conclusion that Lohse's recantation was not genuine. However, it stated that a new trial was nonetheless required because the jury might have reached a different verdict without Lohse's testimony since her recantation "has at least an indicia of genuineness that troubles us." It also said, "Now that we are confronted with the recantation, the evidence establishing the corpus delecti lacks proof of intent to flee."

The court of appeals erred in reversing defendant's conviction. The correct rule is, as we made clear in *State v. Caldwell*, 322 N.W.2d 574, 585 including at n. 8 (Minn.1982), that a defendant should be given a new trial on the basis of recantation of testimony by a material witness only if the trial court is reasonably satisfied that the testimony was false, that the party was taken by surprise by the testimony and was unable to meet it or did not know of its falsity until after the trial, and that the jury might have reached a different conclusion without the false testimony.

As stated in 3 C. Wright, *Federal Practice and Procedure: Criminal 2d,* § 557.1 at 344 (1982), if the trial court finds that the recantation is not genuine, then the court does not even need to proceed to the issue of whether the jury might have reached a different result without the witness' testimony.

Here the trial court's determination that the recantation was not genuine is supported by the evidence. Under the circumstances, the court of appeals erred in reversing the trial court and awarding defendant a new trial. Accordingly, we reverse the award of a new trial and reinstate defendant's conviction of fleeing a peace officer.

Reversed and judgment of conviction reinstated.