**Calvin Gene DANIELS,**
**petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

No. C6–89–290.

Supreme Court of Minnesota.

Nov. 3, 1989.

Michael F. Cromett, Asst. State Public Defender, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Lee W. Barry, III, Hennepin County Attys. Office, Appellate Section, Minneapolis, for respondent.

## OPINION

YETKA, Justice.

In 1985, we affirmed the conviction of petitioner, Calvin Gene Daniels, for the first-degree murder of Albert James in *State v. Daniels,* 361 N.W.2d 819, 822 (Minn.1985). In 1988, petitioner petitioned for post-conviction relief seeking a new trial based on the recanted testimony of Edward McConaughead, a witness at petitioner's trial. The district court denied this petition after conducting an evidentiary hearing. We affirm.

We summarized the evidence presented at Daniels' 1983 trial in *Daniels,* 361 N.W.2d at 822–26. In short, on February 15, 1982, at approximately 2:00 a.m., two men robbed Vinisha Gaines and Albert James as they were sitting in a car outside of Gaines's townhouse. James ran after the two men. One of the men shot and killed James.

Petitioner was convicted for the first-degree murder of James. The state's case relied in part on the testimony of McConaughead, who later recanted. In addition to McConaughead's testimony, the state's case included: (1) testimony of Vinisha Gaines identifying petitioner as resembling one of the robbers; (2) ample evidence plac-

ing the car petitioner traveled in on the night of the murder at the scene of the murder; and (3) testimony of Terry Henderson and Kathy Morgan that petitioner made self-incriminating statements immediately after the murder. In a separate trial, Stanford Parker was also convicted for the first-degree murder of James. We affirmed that conviction in *State v. Parker*, 353 N.W.2d 122, 128 (Minn.1984).

At petitioner's trial, McConaughead testified that, in September 1982, while in jail on an armed robbery charge, he told his lawyer that he had some information regarding the shooting of James. He shared this information with the police and then entered into a plea agreement, thereby reducing his charge. McConaughead testified further that on February 15, 1982, as McConaughead walked home from a party, he saw two men whom he later identified as Parker and petitioner[1] approach the driver's side of James's parked car. They both carried handguns. Like Gaines, McConaughead described petitioner as taller and darker complected than Parker. He could not remember what clothes the men wore. McConaughead said that, after one man shot into the car, Gaines got out of the car and dove into the snow.

At the post-conviction hearing, McConaughead testified that he was no longer 100% certain that Parker and petitioner murdered James because he claimed he saw the people who really did it in a tippling house a few months after petitioner's trial. One person in the tippling house strongly resembled Parker and wore a coat and stocking cap like the man he saw the night James was murdered. McConaughead did not see a man who strikingly resembled petitioner, but only assumed that a tall, slender man in the tippling house was the real murderer because he accompanied a man who looked exactly like Parker. Through conversations with other unnamed persons, McConaughead ascertained that the men he saw in the tippling

house had followed James to Minneapolis in order to kill him.

The other witness at the post-conviction hearing, Larry Wilson, testified that, in the summer of 1982, while he and McConaughead shared a holding cell for approximately 30 days, Wilson told McConaughead about the charges against petitioner and Parker for the murder of James. They discussed how they could use the information to get out of jail. Wilson said that McConaughead used the information.

On the morning before the defense presented its case, petitioner told his attorney about the conversation with Wilson. Petitioner's attorney sent his law clerk to talk with Wilson. By the time she returned with a written statement signed by Wilson, the defense had already rested.

The trial court's decision on a motion for a new trial will not be disturbed on appeal except on a clear abuse of discretion. *Berry v. State*, 364 N.W.2d 795, 796 (Minn. 1985); *State v. Meldahl*, 310 Minn. 136, 138, 245 N.W.2d 252, 253 (1976). Courts have traditionally looked with disfavor on motions for a new trial based on recantations unless extraordinary or unusual circumstances exist. *State v. Hill*, 312 Minn. 514, 523, 253 N.W.2d 378, 384 (1977). We have clearly stated the standard trial courts should apply in exercising their discretion:

> [A] defendant should be given a new trial on the basis of recantation of testimony by a material witness only if the trial court is reasonably satisfied that the testimony was false, that the party was taken by surprise by the testimony and was unable to meet it or did not know of its falsity until after the trial, and that the jury might have reached a different conclusion without the false testimony.
>
> * * * if the trial court finds that the recantation is not genuine, then the court does not even need to proceed to the issue of whether the jury might have reached a different result without the witness' [sic] testimony.

---

1. McConaughead picked out photographs of Parker and petitioner out of an array of eight

photographs.

*Parker v. State,* 437 N.W.2d 65, 66–67 (Minn.1989) (quoting State v. Erdman, 422 N.W.2d 511, 512 (Minn.1988)).

Petitioner asserts that McConaughead's trial testimony was false for several reasons. First, at trial, McConaughead decisively identified petitioner and Parker; yet, he could not recall specifically what clothing they wore. This, however, also casts doubt on McConaughead's testimony at the post-conviction hearing. There, his recantation rested primarily on his identification of the "real" murderers whom he recognized by the clothes they wore. Second, McConaughead testified that petitioner was noticeably taller than Parker and that this testimony conflicted with Gaines's testimony. On the contrary, McConaughead's testimony harmonized with Gaines's description of petitioner as taller and darker than Parker. Finally, although McConaughead's and Gaines's testimony about what happened after one of the robbers fired the first shot conflicted—Gaines said that she got down in the car after a second shot whereas McConaughead said that she dove out the car and hit the ground after the first shot—McConaughead's testimony corresponded with the other evidence presented at trial. Accordingly, the evidence supports the trial court's finding that it was not "reasonably satisfied" that McConaughead's trial testimony was false.

McConaughead also testified against Parker and later recanted. This court affirmed the denial of a new trial based on that recantation in *Parker v. State,* 437 N.W.2d 65, 67 (Minn.1989). In *Parker,* this court found that the trial court was reasonably satisfied that McConaughead's recantation was false:

At trial McConaughead expressly stated that he did not remember what clothing the robber he identified as petitioner was wearing, but his recantation depended on a recollection of the clothing. McConaughead's trial testimony fit with other evidence overwhelmingly pointing to petitioner's guilt. Furthermore, McConaughead could not name at the postconviction hearing the Gaines family members with whom he claimed he spoke at the gambling house about the real murderer. *Id.*

The facts in this case duplicate *Parker.* McConaughead recognized the alleged true murderers based in part on clothing although he testified at trial that he could not remember what Parker and petitioner wore. His testimony corresponded with the other evidence at trial. McConaughead would not identify the people who also believed that the men in the gambling house really murdered James. An additional factor undermines the credibility of McConaughead's recantation in this action: Unlike in *Parker,* McConaughead did not see a man who strikingly resembled petitioner, but only assumed the tall, slender man in the gambling house was the real murderer because he accompanied a man who looked exactly like Parker. This evidence supports the trial court's finding that McConaughead's recantation was false.

Moreover, petitioner did not meet the other elements necessary to grant a new trial based on a recantation. The trial testimony did not take him by surprise because it basically conformed with the testimony of Gaines, Morgan and Henderson. Further, before the trial ended, Wilson's statement revealed the potential falsity of McConaughead's testimony. Accordingly, this court need not address the issue of whether a jury might have reached a different result without McConaughead's testimony. *Parker v. State,* 437 N.W.2d 65, 67 (Minn.1989); *State v. Erdman,* 422 N.W.2d 511, 513 (Minn.1988).

Petitioner emphasizes the differences between this action and Parker's case. It differs primarily because Carlus Wilder and Joe Morgan did not testify at petitioner's trial although they did at Parker's. The testimony of two state witnesses, Terry Henderson and Kathy Morgan, at petitioner's trial paralleled Joe Morgan's testimony that petitioner made self-incriminating statements to him shortly after the shooting and asked him to supply an alibi.

Wilder testified that Parker planned to rob James and asked Wilder to participate in the robbery. *Id.* No witness repeated

this incriminating testimony at petitioner's trial. The trial court in *Parker*, however, affirmed the denial of a new trial based on the unreliability of McConaughead's recantation. It did not reach the issue of whether the evidence, including Wilder's testimony, would have persuaded the jury to convict Parker even without McConaughead's testimony.

Here, the jury convicted petitioner without the benefit of Wilder's testimony. Since here, as in *Parker*, we agree with the trial court's finding that McConaughead's recantation is unreliable, we need not determine whether the jury would have reached the same result without McConaughead's testimony even though his testimony may have carried more weight in the absence of Wilder's testimony. The trial court is affirmed.