*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1795**

Hassan Mohamed Abdillahi, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent

**Filed August 17, 2015
Affirmed
Worke, Judge**

Hennepin County District Court
File Nos. 27-CR-08-52463, 27-CR-CV-14-42

Hassan M. Abdillahi, Bayport, Minnesota (pro se appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Considered and decided by Worke, Presiding Judge; Reilly, Judge; and Stoneburner, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**WORKE**, Judge

In appellant's third appeal of his second-degree intentional murder conviction, he argues that his conviction should be reversed, or alternatively that he is entitled to an evidentiary hearing or new trial, because (1) false witness testimony led to his conviction; (2) his incarceration violates the Fourteenth Amendment; (3) his trial counsel was ineffective; (4) the district court erred by denying his motion for postconviction discovery; and (5) the prosecutor was biased. We affirm.

## FACTS

A.H. was shot and killed in September 2008 outside a mall in Minneapolis. A surveillance video showed three people standing outside the mall: A.H., A.I., and S.M. A hooded individual spoke with the three people then exited the video frame. A.I. and S.M. entered the mall, and the hooded individual returned and shot A.H. A.I. and S.M. identified appellant Hassan Mohamed Abdillahi as the hooded individual. A.I. testified to this identification at trial, but S.M. refused to testify and was held in contempt of court. Another trial witness, K.O., testified that in early September 2008, Abdillahi told him that he was going to kill A.H. in retaliation for the murder of Abdillahi's cousin by another individual who had since fled the country. In June 2009, a jury found Abdillahi guilty of second-degree intentional murder. A.I. was murdered by an unknown assailant in October 2009.

In November 2009, Abdillahi appealed his conviction, arguing that: (1) the evidence was insufficient to sustain the guilty verdict, (2) the district court abused its

discretion by admitting *Spreigl* evidence and giving an erroneous jury instruction, (3) the prosecutor committed misconduct, (4) the district court abused its discretion by denying his discovery request regarding two unrelated homicide investigations, and (5) the cumulative effect of these errors denied him a fair trial. *See State v. Abdillahi*, No. A09-2011, 2011 WL 691623, at *1 (Minn. App. Mar. 1, 2011), *review denied* (Minn. May 17, 2011). This court affirmed on all issues. *Id.*

Abdillahi then petitioned for postconviction relief. In August 2012, Abdillahi appealed the district court's denial of his first postconviction petition, arguing that the district court erred by concluding that (1) he failed to prove his ineffective-assistance-of-counsel claims and (2) his allegations that the admission of *Spreigl* evidence was erroneous and that the complaint contained factual errors that were meritless and *Knaffla*-barred. *See Abdillahi v. State*, No. A12-1477, 2013 WL 2924900, at *1 (Minn. App. June 17, 2013), *review denied* (Minn. Aug. 20, 2013). This court again affirmed on all issues. *Id.*

In August 2013, Abdillahi filed a second postconviction petition along with several collateral motions. He moved the district court to compel discovery and hold an evidentiary hearing on his claim of newly discovered evidence of falsified trial testimony, determine whether trial and appellate counsel were ineffective, and determine whether the prosecutor was motivated by "discriminatory purposes." The district court granted an evidentiary hearing on the claim of falsified testimony and denied the other requests.

After the evidentiary hearing, the district court denied Abdillahi's request for a new trial, concluding that Abdillahi failed to meet his burden to show that there was false testimony or recantation. This appeal follows.

## D E C I S I O N

### *False Testimony*

Abdillahi first argues that he is entitled to a new trial because two witnesses, A.I. and K.O., falsely testified at his trial and because A.I. recanted shortly after trial. The court may grant a new trial based on false testimony when: (1) the court is reasonably satisfied that the testimony was false; (2) the jury might have reached a different conclusion without the testimony; and (3) the petitioner was surprised by the testimony and was unable to counteract it or did not know it was false until after the trial. *State v. Nicks*, 831 N.W.2d 493, 511 (Minn. 2013) (citing *Larrison v. United States*, 24 F.2d 82, 87-88 (7th Cir. 1928). We review the district court's postconviction decision to deny a new trial for an abuse of discretion, and our review "is limited to whether there is sufficient evidence to sustain the [district] court's findings." *State v. Hooper*, 620 N.W.2d 31, 40 (Minn. 2000). "Courts have traditionally looked with disfavor on motions for a new trial based on recantations unless extraordinary or unusual circumstances exist." *Daniels v. State*, 447 N.W.2d 187, 188 (Minn. 1989).

The district court held, as a preliminary bar, that A.I.'s alleged recantation was inadmissible hearsay evidence. Hearsay is an out-of-court statement made by a declarant offered to prove the truth of the matter asserted. Minn. R. Evid. 801(c). Hearsay is inadmissible unless there is an exception. Minn. R. Evid. 802.

4

Abdillahi asserts that A.I.'s recantation falls under a hearsay exception because it was a sufficiently corroborated statement against penal interest. A declarant's statement is not excluded by the hearsay rule if the declarant is unavailable and the statement is against the declarant's interest. Minn. R. Evid. 804(a)(4),(b)(3). A declarant is unavailable if he "is unable to be present or to testify at the hearing because of death." Minn. R. Evid. 804(a)(4). Because A.I. is deceased, he is unavailable. A statement is against interest if:

> at the time of its making [it is] so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

Minn. R. Evid. 804(b)(3). Because A.I.'s recantation would make his trial testimony perjury, it was a statement against penal interest. But a statement that exposes the declarant to criminal liability and is offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. *Id.* To determine if a statement is corroborated, the court considers the totality of the circumstances, utilizing the following factors:

> (1) whether other evidence corroborates the facts in the hearsay statement; (2) the extent to which the hearsay statement is consistent with the declarant's prior testimony and other statements; (3) the relationship between the declarant and other witnesses and parties, including the defendant; (4) whether the declarant has reason to fabricate the statement; (5) the overall credibility and character of the declarant; and (6) the timing of the statement.

*Ferguson v. State*, 826 N.W.2d 808, 813 (Minn. 2013). "[T]he relevance of each of the six factors will vary depending on the facts of each case." *Dobbins v. State*, 845 N.W.2d 148, 153 (Minn. 2013), *cert. denied*, 134 S. Ct. 1913 (2014).

Abdillahi claims that A.I's recantation is corroborated by other facts because Abdillahi had an alibi for the time of the murder and A.I. told law enforcement and the county attorney's office that he was not able to identify Abdillahi. But Abdillahi's own alibi claim does not necessarily corroborate A.I.'s alleged recantation, and Abdillahi does not provide evidence for his assertion that A.I. previously said he was unable to identify Abdillahi. This factor weighs against corroboration.

The second factor also weighs against corroboration because the alleged recantation is inconsistent with A.I.'s testimony and evidence in the record.

The district court did not address the third factor, the relationship between the parties. Abdillahi does not provide any record-supported arguments on this factor.

While Abdillahi asserts that A.I. had no reason to fabricate his recantation, based on the record, A.I. may have been rightfully afraid—he was murdered by an unknown assailant a few months after the trial. Thus, the fourth factor also weighs against corroboration.

The fifth factor weighs against corroboration because there is no evidence in the record that A.I. was not credible or had a history of falsely accusing others of crimes.

We agree with the district court's analysis that the timing of A.I.'s recantation, the sixth factor, was "highly suspect." A.I. allegedly recanted between Abdillahi's trial and sentencing, but the people he recanted to, A.A. and H.I., did not come forward for over

6

three years.  The district court noted that "neither witness offered a credible explanation for the delay."  Based on these factors, the district court did not abuse its discretion by finding that A.I.'s recantation was not corroborated and therefore was inadmissible hearsay.

Abdillahi claims that the witnesses who testified that A.I. recanted, A.A. and H.I., were credible.  But we defer to the district court on matters of credibility, *State v. Dickerson*, 481 N.W.2d 840, 843 (Minn. 1992), *aff'd*, 508 U.S. 366, 113 S. Ct. 2130 (1993), and the district court found that neither witness was credible.  The court found A.A.'s testimony, that A.I. told him he never saw the shooter and only testified against Abdillahi because his life was threatened, not credible because the surveillance video shows A.I. with the victim outside the mall when the shooter walked by.  The district court found H.I.'s testimony, that A.I. did not see the shooter and was not at the mall that evening, not credible for the same reason and because H.I.'s previous affidavit did not mention these facts.

Abdillahi claims that the district court misinterpreted A.A. and H.I.'s testimony to mean that A.I. said he was not at the mall, when instead A.I. said only that he "didn't really see [the shooter]," that "he didn't see nobody," and that he "didn't see who did it."  But H.I. testified that A.I. "said he wasn't there.  Like he wasn't at this . . . mall or anything.  They coerced him to say that."  And the other statement Abdillahi points to, that A.I. did not see who shot A.H., does not undermine the district court's findings because it is undisputed that A.I. did not witness the actual murder.

Abdillahi also argues that A.I.'s recantation was admissible as an excited utterance. Abdillahi provides no legal citation or analysis regarding this argument, and we decline to address this argument in the absence of adequate briefing. *State v. Bartylla*, 755 N.W.2d 8, 22-23 (Minn. 2008). Because we conclude that A.I.'s alleged recantation is inadmissible hearsay, we need not reach Abdillahi's claim that the recantation was admissible as substantive evidence because it violated his right to due process.

Abdillahi next argues that the district court erred when it found that K.O. was competent and available to testify at trial and the postconviction hearing. "The determination of a witness' competency is one peculiarly for the [district] court to consider." *State v. Lau*, 409 N.W.2d 275, 277 (Minn. App. 1987). We review the district court's competency determination for an abuse of discretion. *State v. Sime*, 669 N.W.2d 922, 925 (Minn. App. 2003).

Abdillahi asserts that the court must evaluate whether the witness has the ability to recall facts and the capacity to tell the truth. But this two-part evaluation refers to a *child* witness's competency to testify. *State v. Struss*, 404 N.W.2d 811, 814 (Minn. App. 1987), *review denied* (Minn. June 9, 1987). And while Abdillahi argues that the district court erred by relying on K.O.'s rule 20 evaluation because a rule 20 evaluation is too high of a standard to determine a witness's (and not a criminal defendant's) competency, the court considered both the rule 20 and its in camera questioning of K.O. The district court noted that K.O. "tracked the questions and provided responsive answers" and that K.O. specifically denied telling a third party, An. A., that his trial testimony was false.

On this record, the district court did not abuse its discretion in determining that K.O. was competent to testify.

Abdillahi next argues that K.O. was unavailable because he could not remember telling An. A. that he testified falsely. A witness is unavailable to testify regarding a proffered hearsay statement if he "testifies to a lack of memory of the subject matter of the . . . statement." Minn. R. Evid. 804(a)(3). But K.O. did not testify that he lacked a memory of his conversation with An. A.; K.O. denied having the conversation. Therefore, the district court properly found K.O. available.

Abdillahi additionally asserts that K.O.'s alleged statements to An. A. must be admissible as substantive evidence because Abdillahi's right to due process would be violated if he cannot show that K.O. made false statements. But because K.O. was available and competent to testify, the statements do not fall under a hearsay exception and this argument is without merit. Further, Abdillahi's assertion that his right to due process was violated because his postconviction attorney did not timely challenge K.O.'s competency is not relevant because due process refers to government actors and his attorney is a private party whose conduct "generally lies beyond the scope of the United States Constitution." *State v. Beecroft*, 813 N.W.2d 814, 837 (Minn. 2012).[1]

Because we conclude that there was sufficient evidence for the district court to determine that it was not satisfied that the witnesses' testimony was false, the district

[1] Abdillahi also claims that the district court judge was biased, and requests that we remand for a hearing in front of an unbiased judge, partially because he has not received complete transcripts. But the district court granted Abdillahi's motion for complete transcripts. This court denied a separate motion for complete transcripts as unnecessary because the district court had already granted his motion for complete transcripts.

court did not abuse its discretion by denying Abdillahi a new trial and we need not address the second and third *Larrison* prongs.

### *Actual Innocence*

Abdillahi argues that the district court erred by not allowing him to amend his postconviction pleading to claim that his conviction was unconstitutional based on his actual innocence. But Abdillahi does not provide any relevant authority for why the district court must allow an amendment when he cites only civil (and not criminal) pleading rules.

Regardless, Abdillahi's claims of actual innocence fail on the merits. Abdillahi asserts that there is sufficient proof of his actual innocence based on his own trial testimony and because A.I. recanted and K.O. was not competent to testify. But we affirm the district court's findings that A.I. did not satisfactorily recant and that K.O. was competent to testify, essentially leaving Abdillahi with a sufficiency-of-the-evidence claim. And this court has already rejected Abdillahi's sufficiency-of-the-evidence claim on direct appeal. Abdillahi is therefore *Knaffla*-barred from raising this claim again. *See Powers v. State*, 731 N.W.2d 499, 501 (Minn. 2007) (holding that a postconviction petition may not raise issues that are "essentially the same" as those raised on direct appeal); *State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976) (stating that all matters raised on direct appeal, or known but not raised, will not be considered in postconviction proceedings).

*Ineffective assistance of counsel*

Abdillahi next argues that his trial counsel was ineffective because he "forgot" to call a witness to rebut K.O.'s testimony. Abdillahi raised the issue of ineffective assistance of both trial and appellate counsel in his first postconviction petition. *See Jones v. State*, 671 N.W.2d 743, 746 (Minn. 2003) (extending the *Knaffla*-bar to matters raised in a prior postconviction-relief petition). While the *Knaffla* rule has two exceptions that allow review if a novel legal issue is presented or if review is necessary in the interests of justice, *Schleicher v. State*, 718 N.W.2d 440, 447 (Minn. 2006), Abdillahi's claim does not fall under either of these exceptions. No novel legal issue is raised, and it is not in the interests of justice for this court to review the same issue again. Therefore, Abdillahi's ineffective-assistance-of-counsel claim is *Knaffla*-barred.

*Postconviction discovery*

Abdillahi next requests that this court compel disclosure of A.I.'s pretrial statements. But this court denied that request on March 11, 2015. Thus, we decline to address it again.

*Prosecutor bias*

Abdillahi finally argues that he is entitled to a new trial or an evidentiary hearing because his right to equal protection was violated when the prosecuting attorney on his case demonstrated racial bias. Abdillahi claims that during an unrelated trial of a Somali

11

man seven months after his conviction, the prosecuting attorney posted "anti[-]Somali racist comments" on Facebook. [2]

The district court found that because the alleged comments were made seven months after Abdillahi's conviction, they could not have biased his proceedings and denied an evidentiary hearing on the matter. This court reviews the denial of a request for an evidentiary hearing for an abuse of discretion. *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012). The court should resolve any doubt about whether an evidentiary hearing should be held in the petitioner's favor. *Bobo v. State*, 820 N.W.2d 511, 516 (Minn. 2012). But an evidentiary hearing is not required when a petitioner makes an argument without factual support. *Laine v. State*, 786 N.W.2d 635, 637 (Minn. 2010).

Abdillahi asserts that he is entitled to discovery and an evidentiary hearing on prosecutor bias because of the alleged Facebook comments. But, like the district court found, he does not show how these comments affected his conviction. Abdillahi cites several equal-protection cases, but they primarily regard selective prosecution. *See, e.g.*, *United States v. Armstrong*, 517 U.S. 456, 456, 116 S. Ct. 1480, 1482 (1996) (holding that to establish entitlement to discovery defendant must produce credible evidence that similarly situated defendants of other races were not prosecuted); *Wayte v. United States*, 470 U.S. 598, 599, 105 S. Ct. 1524, 1526 (1985) (holding that a passive enforcement policy for draft nonregistrants did not violate equal protection);. Abdillahi's second-

---

[2] Abdillahi submitted affidavits from public defenders claiming that the prosecutor posted that she had to "keep the streets of Minneapolis safe from the [sic] Somalias." But he has not provided the actual Facebook posts and there is generally no right to postconviction discovery. *Thompson v. State*, 284 Minn. 274, 277, 170 N.W.2d 101, 103-04 (1969).

degree murder offense was unlikely to be selectively prosecuted and he provides no facts to demonstrate that race or a discriminatory motive affected the choice to prosecute him or his right to a fair trial.[3]   Therefore, the district court did not abuse its discretion in denying an evidentiary hearing and discovery on this issue.

**Affirmed.**

---

[3] We note that the postings, if true, are egregious and may constitute professional misconduct, but this alone does not entitle Abdillahi to an evidentiary hearing.  *See Zenanko v. State*, 587 N.W.2d 642, 645 (Minn. 1998) ("An evidentiary hearing is not required unless facts are alleged which, if proven true, would be sufficient to support the petitioner's request for relief.").