*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0663**

State of Minnesota,
Respondent,

vs.

Jason Lonnie Gabbert,
Appellant.

**Filed January 19, 2016
Affirmed
Bjorkman, Judge**

Ramsey County District Court
File No. 62-CR-14-1482

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, Minnesota (for respondent)

John L. Lucas, Minneapolis, Minnesota (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Ross, Judge; and Larkin, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BJORKMAN**, Judge

Appellant challenges his theft-by-swindle conviction, arguing that the evidence was insufficient to support the conviction, and that the district court abused its discretion in denying a new trial.  We affirm.

# FACTS

Appellant Jason Gabbert and M.M. are self-employed ticket brokers. In August 2013, Gabbert provided M.M. with 200 Minnesota State Fair tickets to sell to fairgoers. M.M. agreed to return a majority of the ticket proceeds to Gabbert and keep a small commission for himself. M.M. later refused to give Gabbert his share of the proceeds due to a "difference of opinion" over how much he was owed.

Gabbert devised a scheme to recover the money. Using a pseudonym, Gabbert contacted M.M. via text message offering to sell 50 tickets to a December 2013 Vikings game. M.M. agreed to purchase the tickets for $2,150 and pay cash upon delivery. Gabbert voided the tickets by reprinting them after he received payment in the form of a cashier's check.

After voiding the tickets, Gabbert revealed the true nature of the transaction in a text message to M.M. Gabbert told M.M. that he was keeping the money in lieu of payment for the state fair tickets. M.M. informed Gabbert that a mutual associate, J.C., actually paid for the Vikings tickets. Gabbert contacted J.C., who confirmed that he paid for the invalid tickets.

J.C. reported the incident to law enforcement. In a recorded telephone conversation with an investigating police officer, Gabbert admitted that he devised the "ruse" of selling M.M. worthless tickets in order to recoup the money owed to him.

Gabbert was charged with one count of theft by swindle. A jury found him guilty following a two-day trial that included testimony from M.M., J.C., the police investigator, and Gabbert. Gabbert moved for a new trial prior to sentencing on the

2

ground that J.C. admitted he lied when he testified about buying the worthless tickets. The district court denied the motion. Gabbert appeals.

**D E C I S I O N**

## I. The evidence was sufficient to support Gabbert's conviction.

In reviewing a sufficiency-of-the-evidence claim, our analysis is limited to examining whether the facts in the record and the legitimate inferences that can be drawn from those facts would permit a jury to reasonably conclude that the defendant was guilty of the charged offense. *State v. Merrill*, 274 N.W.2d 99, 111 (Minn. 1978). We view the evidence in the light most favorable to the jury's verdict, and assume that the jury believed the state's witnesses and disbelieved any evidence to the contrary. *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989).

To prove theft by swindle, the state must establish three elements: (1) an individual obtained property or services, (2) from another person, (3) by swindle. Minn. Stat. § 609.52, subd. 2(a)(4) (2012). "[T]he essence of a swindle is defrauding another person by an intentional misrepresentation or scheme." *State v. Flicek*, 657 N.W.2d 592, 598 (Minn. App. 2003). Gabbert argues that the offense includes an additional element—that the defendant did not have a claim of right to the property or services obtained by swindle. Based on this additional element, Gabbert contends that the evidence was insufficient because he merely recovered funds that M.M. owed him. We are not persuaded.

Minn. Stat. § 609.52, subd. 2(a) (2012), defines dozens of theft offenses, which include, but are not limited to, the following:

3

Whoever does any of the following commits theft and may be sentenced as provided in subdivision 3:

(1) intentionally and *without claim of right* takes, uses, transfers, conceals or retains possession of movable property of another without the other's consent and with intent to deprive the owner permanently of possession of the property; or

. . . .

(4) by swindling, whether by artifice, trick, device, or any other means, obtains property or services from another person[.]

(Emphasis added.) Gabbert asserts that because subdivision 2(a)(1) requires that a defendant who obtains movable property must do so "without claim of right," a similar requirement exists under the theft-by-swindle provision in subdivision 2(a)(4). We disagree. These two definitions of theft are independent and separate from each other, as evidenced by the use of the disjunctive "or." And while subdivision 2(a)(1) contains a claim-of-right element, Gabbert was charged under subdivision 2(a)(4), which does not. Accordingly, the plain language of subdivision 2(a)(4) establishes that the state did not need to prove that Gabbert lacked a claim of right to the money he obtained in order to prove theft by swindle.

Applying the plain language of the theft-by-swindle statute to this case, the evidence is sufficient to sustain Gabbert's conviction. Gabbert admits that he devised a "ruse" to sell M.M. tickets that he planned to invalidate after receiving payment. He also admits that he received payment for the tickets by cashier's check and immediately invalidated the tickets. These admissions provide a sufficient basis to conclude that Gabbert intentionally misrepresented that he was selling valid tickets, and based on this

4

misrepresentation he defrauded someone, either M.M. or J.C., out of over $2,000. On this record, we conclude that the evidence is sufficient to support Gabbert's conviction.[1]

## II. The district court did not abuse its discretion in denying Gabbert's motion for a new trial.

A new trial may be granted because of false testimony where (1) the court is reasonably well satisfied the testimony was false, (2) the jury might have reached a different conclusion without the testimony, and (3) the petitioner was surprised by the testimony and was unable to counteract it or did not know it was false until after the trial. *State v. Nicks*, 831 N.W.2d 493, 511 (Minn. 2013). "Courts have traditionally looked with disfavor on motions for a new trial based on recantations unless extraordinary or unusual circumstances exist." *Daniels v. State*, 447 N.W.2d 187, 188 (Minn. 1989). The denial of a new trial will not be reversed absent an abuse of discretion. *State v. Hooper*, 620 N.W.2d 31, 40 (Minn. 2000).

Gabbert argues that he is entitled to a new trial based on J.C.'s alleged posttrial admission that he "lied about losing [his] own money" in Gabbert's scheme. We are not persuaded. The state was required to prove that Gabbert intentionally obtained money "from another person" by swindle. Minn. Stat. § 609.52, subd. 2(a)(4). The statute's general reference to "another person" demonstrates that the state only had to prove that *someone* was swindled, not the specific person who was swindled. Therefore, whether

---

[1] Gabbert also contends that the district court abused its discretion by failing to provide a claim-of-right instruction to the jury. Because theft by swindle does not contain a claim-of-right element, we discern no abuse of discretion.

the cashier's check that Gabbert received came from M.M. or J.C. is irrelevant because it is undisputed that Gabbert obtained money from another person as a result of his scheme.

Because J.C.'s alleged false testimony does not alter the fact that Gabbert obtained money from another person through a swindle, we cannot conclude that the jury would have returned a different verdict in its absence. On this record, we discern no abuse of discretion by the district court in denying Gabbert's motion for a new trial.

**Affirmed.**